UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-----------------------------------------------------------------------------------------------

Drametta Todd, individually and on behalf
of a class,

No. 1:10-cv-05598

Plaintiff,

vs.

Target Corporation,

Defendant.

---

## DECLARATION OF BRIAN MELENDEZ
## IN SUPPORT OF
## TARGET'S MOTION FOR SUMMARY JUDGMENT

---

State of Minnesota,                               )
                                                  ) SS.
County of Hennepin                                )

Pursuant to 28 U.S.C. § 1746, the undersigned Brian Melendez declares:

1.      My name is Brian Melendez. I am an attorney representing Defendant

Target Corporation in this action. I am admitted pro hac vice. I make this declaration in

support of Target's motion for summary judgment.

2.      A true and correct copy of each following document accompanies this

declaration:

1

| Ex. | Document |
|-----|----------|
| A | Federal Trade Commission, Bureau of Consumer Protection, Division of Consumer & Business Education, "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts" [TODD 000714–15], *attached to* Pl.'s Am. Resps. & Objec'ns Target's 1st Set Disc. (5/25/11).) |
| B | Visa U.S.A. Inc. Operating Regulations (May 15, 2008) [Cook Dep., Ex. 17 (1/24/11)] |
| C | Order on Motion to Dismiss, *Turner v. Ben & Gabby's, Inc.*, No. 0:08-cv-61033-UU (S.D. Fla. Aug. 26, 2008) |
| D | Receipt (July 17, 2010) [Todd Dep., Ex. 1 at TODD 000673–74 (5/25/11)] |
| E | Sales Audit Copy (July 17, 2010) [Am. Compl. [Doc. 32], Ex. A (2/23/11)] |
| F | Sales Audit Copy (July 17, 2010) [Am. Compl. [Doc. 32], Ex. B (2/23/11)] |
| G | Receipt (Aug. 7, 2010) [Todd Dep., Ex. 1 at TODD 000675–76 (5/25/11)] |
| H | Sales Audit Copy (Aug. 7, 2010) [Am. Compl. [Doc. 32], Ex. C (2/23/11)] |
| I | Target's Answers to Interrogatories (Nov. 30, 2010) |
| J | Deposition of Kristen J. Cook 14–16, 19, 26, 28, 31, 33–34, 37–38, 49 (Jan. 24, 2011) |
| K | Target's Answers to Interrogatories (Set II) (Mar. 23, 2011) |
| L | Deposition of Terry Mackin 12, 30–31 (Mar. 30, 2011) |
| M | Deposition of Drametta Todd 8, 15, 24 (May 25, 2011) |
| N | Plaintiff's Amended Responses and Objections to Defendant Target Corporation's First Set of Discovery (May 25, 2011) |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on June 29, 2011.

/s/ Brian Melendez

_____

Brian Melendez

fb.us.6986432.01

## Certificate of Service

I certify that on June 29, 2011, this paper was served pursuant to Electronic Case Filing, in the manner for which the General Order on Electronic Case Filing (N.D. Ill. June 5, 2009) provides, as to the following Filing Users:

Cathleen M. Combs,
    Attorney for Plaintiff Drametta Todd
ccombs@edcombs.com

Daniel A. Edelman,
    Attorney for Plaintiff Drametta Todd
courtecl@edcombs.com

Francis Richard Greene,
    Attorney for Plaintiff Drametta Todd
fgreene@edcombs.com

James O. Latturner,
    Attorney for Plaintiff Drametta Todd
jlatturner@edcombs.com

Curtis Charles Warner,
    Attorney for Plaintiff Drametta Todd
cwarner@warnerlawllc.com

/s/ Brian Melendez
_____
Attorneys for Defendant
    Target Corporation

fb.us.6986432.01

4

# EXHIBIT A

Drupal.behaviors.print = function(context) {window.print();window.close();}>



# Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts

## Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts [PDF] [En español]

### Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts

What's on the credit and debit card receipts you give your customers? The Federal Trade Commission (FTC), the nation's consumer protection agency, says it's time for companies to check their receipts and make sure they're complying with a law that's been in effect for all businesses since December 1, 2006.

According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten — or truncate — the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT:
\*\*\*\*\*\*\*\*\*\*\*12345
EXP: \*\*\*\*

Why is it important for businesses to make sure they're complying with this law? Credit card numbers on sales receipts are a "golden ticket" for fraudsters and identity thieves. Savvy businesses appreciate the importance of protecting their customers — and themselves — from credit card crime.

But there are other important reasons to make sure your slips are ship-shape. Noncompliance could open a company up to an FTC law enforcement action, including civil penalties and injunctive relief. In addition, the law allows consumers to sue businesses that don't comply and to collect damages and attorney's fees.

5/25/11 8:01 AM

TODD 000714

While Congress passed this provision in December 2003, it has been phased in gradually, requiring merchants with newer electronic card processing machines to comply by December 2004. Merchants with older machines were given until December 1, 2006. So now all companies that electronically print credit or debit card receipts must truncate the information on the copy they give their customers. That's why it's important to make sure all your equipment complies with the law.

Several details of the law are worth noting: It applies only to electronically printed receipts, not to handwritten or imprinted ones. And it applies only to receipts you give your customer at point of sale, not to any transaction record you retain. Be aware, however, that when you keep your customers' personal information — including account data — you have an obligation to keep it safe. Read *Protecting Personal Information: A Guide for Business*, available at ftc.gov/infosecurity, for tips on safeguarding sensitive data.

## For More Information

The FTC works for the consumer to prevent fraudulent, deceptive, and unfair business practices in the marketplace and to provide information to help consumers spot, stop, and avoid them. To file a complaint or to get free information on consumer issues, visit ftc.gov or call toll-free, 1-877-FTC-HELP (1-877-382-4357); TTY: 1-866-653-4261. The FTC enters consumer complaints into the Consumer Sentinel Network, a secure online database and investigative tool used by hundreds of civil and criminal law enforcement agencies in the U.S. and abroad.

## Your Opportunity to Comment

The National Small Business Ombudsman and 10 Regional Fairness Boards collect comments from small businesses about federal compliance and enforcement activities. Each year, the Ombudsman evaluates the conduct of these activities and rates each agency's responsiveness to small businesses. Small businesses can comment to the Ombudsman without fear of reprisal. To comment, call toll-free 1-888-REGFAIR (1-888-734-3247) or go to www.sba.gov/ombudsman.

**May 2007**

**Translation:**
¿Número Equivocado? La Ley Federal Establece que Todos los Negocios Deben Abreviar la Información de las Tarjetas de Crédito en los Recibos

**Source URL:** http://business.ftc.gov/documents/alt007-slip-showing-federal-law-requires-all-businesses-truncate-credit-card-information-receipts

TODD 000715

# EXHIBIT B

# *Visa U.S.A. Inc. Operating Regulations*

## *Volume I—General Rules*

*May 15, 2008*



**\*\*VISA PUBLIC\*\***

ACOSTA
T 0630

*Chapter 7: Dispute Resolution*

Table 7-6: Substitute Transaction Receipt Data
Requirements—Data-Captured Retail Transactions
(May be used only to satisfy Retrieval Request

7.2.F.1 Acquirer Responsibilities

**Table 7-6:**   Substitute Transaction Receipt Data Requirements—Data-Captured
Retail Transactions (May be used only to satisfy Retrieval Request Reason
Code 30, "Request Due to Cardholder Inquiry")

| Required Data | Data-Captured Retail Transactions |
|---|---|
| Account Number | ✓ |
| Card Expiration Date | ✓ |
| Cardholder Name | If available |
| Transaction Date | ✓ |
| Transaction Time | Optional |
| Transaction Amount | ✓ |
| Authorization Code | If any |
| Merchant Name | ✓ |
| Merchant Location | ✓ |
| Description | Merchandise or service |
| Store Department | Optional |
| "Ship to" Address | If applicable |

## 7.2.F   VisaNet Copy Request and Fulfillment Service

An Acquirer must participate in the VisaNet Copy Request and Fulfillment Service for **all**
requested Transaction Receipts.

An Acquirer is not required to provide copies for any of the following:

- Transactions under $25 completed at a Point-of-Transaction Terminal with Contactless
Payment capability

- ATM Transactions

- Magnetic-Stripe Telephone Transactions

- Small Ticket Transactions

- No Signature Required Transactions

### 7.2.F.1   Acquirer Responsibilities

7.2.F.1.a       An Acquirer must respond to an Issuer's Copy Request through the VisaNet Copy
Request and Fulfillment Service, regardless of the Retrieval Request Reason Code
used.

ACOSTA
T 0631

# *Visa U.S.A. Inc. Operating Regulations*

## *Volume I—General Rules*

*November 15, 2008*

**VISA PUBLIC**

ACOSTA
T 0632

Table 7-6: Substitute Transaction Receipt Data
Requirements—Data-Captured Retail Transactions
(May be used only to satisfy Retrieval Request

7.2.F VisaNet Copy Request and Fulfillment Service

**Table 7-6:** Substitute Transaction Receipt Data Requirements—Data-Captured Retail Transactions (May be used only to satisfy Retrieval Request Reason Code 30, "Request Due to Cardholder Inquiry")

| Required Data | Data-Captured Retail Transactions |
|---|---|
| Account Number | ✓ |
| Card Expiration Date | ✓ |
| Cardholder Name | If available |
| Transaction Date | ✓ |
| Transaction Time | Optional |
| Transaction Amount | ✓ |
| Authorization Code | If any |
| Merchant Name | ✓ |
| Merchant Location | ✓ |
| Description | Merchandise or service |
| Store Department | Optional |
| "Ship to" Address | If applicable |

## 7.2.F  VisaNet Copy Request and Fulfillment Service

An Acquirer must participate in the VisaNet Copy Request and Fulfillment Service for **all** requested Transaction Receipts.

An Acquirer is not required to provide copies for any of the following:

- Transactions under $25 completed at a Point-of-Transaction Terminal with Contactless Payment capability

- ATM Transactions

- Magnetic-Stripe Telephone Transactions

- Small Ticket Transactions

- No Signature Required Transactions

ACOSTA
T 0633



# Visa International Operating Regulations

1 April 2010



ACOSTA
T 0634

# Visa International Operating Regulations

1 April 2010

VISA PUBLIC

ACOSTA
T 0635

# Transaction Receipts

## Transaction Receipt General Requirements

### Transaction Receipt Requirements

A Transaction Receipt may be generated electronically or manually. Detailed requirements for each type of Transaction Receipt, including printing and data requirements, are specified in:

- "Electronic Transaction Receipt" (Exhibit 7I)
- "Manual Transaction Receipt" (Exhibit 7J)
- "Electronic Commerce Transaction Receipt" (Exhibit 7K)

On Transaction Receipts used in Japan, space for the Cardholder signature is **not** required on the Merchant or Cardholder copy. Space for the Cardholder signature must be provided on the Acquirer copy.

Visa strongly recommends disguising or suppressing all but the last 4 positions of the primary Account Number on the Cardholder Transaction Receipt from a Point-of-Transaction Terminal.

ID#: 010410-010410-0003641

### Transaction Receipt Description and Currency Requirements

A Merchant must enter the following information on the Transaction Receipt:

- Brief description of the goods or services sold
- Currency symbol (such as US $) or words denoting the Transaction Currency as part of the Transaction amount

Without a currency symbol or identification, the Transaction Currency defaults to the local currency of the Transaction Country.

If the Transaction takes place at a U.S. embassy or consulate on foreign territory, the currency used to complete the Transaction must be disclosed on the Transaction Receipt. *(This only applies in the U.S. Region.)*

ID#: 010410-010410-0008604

### Cardholder Signature for Unknown Amount - VIOR 5.2.A.3, USOR 5.2.M.2

A Merchant must **not** require a Cardholder to sign a Transaction Receipt until the final Transaction amount is entered on the Transaction Receipt.

ID#: 010410-010410-0003120

VISA PUBLIC

1 April 2010
© 2010 Visa. All Rights Reserved.

ACOSTA
T 0636

## Multiple Transaction Receipts and Partial Payment

A Merchant must include on a single Transaction Receipt the total currency amount of goods and services purchased at the same time. A Transaction must **not** be divided by using 2 or more Transaction Receipts. The only exceptions are:

- Purchases in separate departments of a multiple-department store
- Individual Airline tickets issued to each passenger, if required by Airline policy
- Individual Cruise Line tickets issued to each passenger, if required by Cruise Line policy
- Partial amount paid by the Cardholder in cash, check, or both at the time of the sale
- Delayed Delivery Transactions
- Advance Deposit Transactions
- Installment Transactions

In the U.S. Region, additional exceptions are individual passenger railway tickets issued to each passenger, if required by carrier policy. *(This only applies in the U.S. Region.)*

ID#: 010410-010410-0008603

## Multiple Transaction Receipts for Authorizations - U.S. Region 5.2.K.1.f

A U.S. Merchant must **not** use multiple Transaction Receipts to avoid making an Authorization Request for a single Transaction.

ID#: 010410-010410-0004127

## Manual Transaction Receipts - U.S. Region

If the encoded Account Number on a Visa Card cannot be read from the Magnetic Stripe, a U.S. Merchant must follow normal Authorization procedures and complete the Transaction using a Manual Imprinter, unless the Merchant qualifies to use the Card Verification Value 2 result code as a substitute for a Manual Imprint.

ID#: 010410-010410-0005121

## Manual Imprinter Merchant Plate - U.S. Region

A U.S. Merchant must notify its Acquirer when it changes the information on the Manual Imprinter's Merchant plate.

ID#: 010410-010410-0005128

© 2010 Visa. All Rights Reserved.

ACOSTA
T 0637

# Transaction Receipt Data Requirements

## Transaction Receipt Legend

The Cardholder copy of a Transaction Receipt must bear the legend "Retain this copy for statement verification" or similar wording. At a minimum, this legend must appear in the language of the Transaction Country. The legend may also appear in another language.

ID#: 010410-010410-0005290

## Manually Imprinted Transaction Receipts

On manually imprinted Transaction Receipts, a Merchant must:

- Include the Cardholder name if one is printed or embossed on the Card
- If the imprinted information is **not** legible, reproduce it clearly

ID#: 010410-010410-0004121

## Transaction Receipt Information Requirements - U.S. Region

In the U.S. Region, the Transaction Receipt must include:

- Transaction Date
- Brief description of the goods or services sold, returned, or cancelled
- Price of the goods or services, including applicable taxes, or amount of adjustment or credit
- Imprint of the embossed legends from the Card and Merchant plate. If the legends cannot be imprinted, or if the Magnetic Stripe or Chip is read, the Merchant must include at least the Cardholder name or generic consumer identifier (if one is printed or embossed on the Card) Account Number, Merchant name, and place of business.

ID#: 010410-010410-0005122

© 2010 Visa. All Rights Reserved.

ACOSTA
T 0638

## Transaction Receipt Signature Line Notations - U.S. Region

A U.S. Merchant must write the following letters or words on the signature line of the Transaction Receipt, if applicable:

## Transaction Receipt Completion - U.S. Region

| Transaction Type | Signature Line Printing |
|---|---|
| Telephone Order | TO |
| Mail Order | MO |
| No Show | NO SHOW |
| T&E Advance Deposit | ADVANCE DEPOSIT |
| Priority Check-out | PRIORITY CHECK-OUT |
| Recurring | RECURRING TRANSACTION |
| Advance Payment Service | ADVANCE PAYMENT |

ID#: 031209-150210-0005129

## Electronic Commerce Transaction Receipt Data - U.S. Region

In addition to the requirements specified in "Electronic and Manual Transaction Receipts" (Exhibit S), a Transaction Receipt completed for an Electronic Commerce Transaction in the U.S. Region must include:

- Merchant name most recognizable to the Cardholder, such as:
  - Merchant "doing business as" name (DBA)
  - Merchant universal resource locator (URL)
  - Merchant name used in the Clearing Record
- Customer service contact, including telephone number. If a Merchant delivers goods or services internationally, both local and internationally accessible telephone numbers must be included.
- Terms and conditions of sale, if restricted
- Exact date free trial period ends, if offered
- Cancellation policies

ID#: 010410-010410-0005148

ACOSTA
T 0639

## Internet Payment Service Provider Name on Transaction Receipt - U.S. Region

For a Transaction Receipt completed by an Internet Payment Service Provider (IPSP) in the U.S. Region, if a Cardholder accesses a Sponsored Merchant's Website and is then linked to the IPSP Website for payment, the IPSP's name must appear on the Transaction Receipt in conjunction with the Sponsored Merchant's name.

The IPSP's name may appear alone on the Transaction Receipt if the:

- Cardholder accesses the IPSP's Website directly
- IPSP's name is visible to the Cardholder during the selection, order, and payment processing services

If the IPSP's name appears alone on the Transaction Receipt, Visa may require that the Sponsored Merchant's name be included on the Transaction Receipt if the IPSP or its Sponsored Merchants cause undue economic hardship to the Visa system, including, but not limited to:

- Qualifying for the Global Merchant Chargeback Monitoring Program or the Merchant Chargeback Monitoring Program
- Generating excessive Copy Requests

ID#: 010410-010410-0006125

## High-Risk Internet Payment Service Provider Transaction Receipt - U.S. Region

For a Transaction Receipt completed by a High-Risk Internet Payment Service Provider (IPSP) in the U.S. Region, the High-Risk IPSP's name must appear in conjunction with the High-Risk Sponsored Merchant's name, as specified in "VisaNet Clearing Message Content Standards" (Exhibit NN).

The payment provider information specified below must be included either:

- On the Web site checkout screen used to present the total purchase amount
- Within the sequence of pages the Cardholder accesses during the checkout process

[High-Risk Internet Payment Service Provider name] is a designated payment processor for [High-Risk Sponsored Merchant name]. [High-Risk Internet Payment Service Provider name *Sponsored Merchant name] will appear on your Cardholder statement.

ID#: 010410-010410-0005843

© 2010 Visa. All Rights Reserved.

ACOSTA
T 0640

# Transaction Receipt Delivery to Cardholder

## Transaction Receipt Delivery Requirements

A Merchant must provide a completed copy of the Transaction Receipt to the Cardholder at the time that the purchased goods are delivered or services are performed.

An Electronic Commerce Merchant may deliver the Transaction Receipt in either of the following formats:

- Electronic (e.g., e-mail or fax)
- Paper (e.g., hand-written or terminal-generated)

A Transaction Receipt is **not** required for a Small Ticket Transaction unless requested by the Cardholder.

ID#: 010410-010410-0008621

## Amended Transaction Receipt Delivery

A Hotel, Car Rental Company, or Cruise Line must send the Cardholder a copy of any amended or additional charges added to a Transaction Receipt.

ID#: 010410-010410-0005050

## Transaction Receipt Delivery Requirements - U.S. Region 5.2.N

A U.S. Merchant must provide a completed copy of the Transaction Receipt to the Cardholder as follows:

- At the time that the purchased goods are delivered or services are performed, except for:
  - **Effective through 16 April 2010,** a Transaction under US $25 completed at a Point-of-Transaction Terminal with Contactless Payment capability
  - **Effective 17 April 2010,** a Transaction less than or equal to US $25 completed at a Point-of-Transaction Terminal with Contactless Payment capability
  - A Small Ticket Transaction
  - A No Signature Required Transaction
  - A T&E Express Service Transaction involving Dynamic Currency Conversion
  - A Magnetic-Stripe Telephone Transaction
- At the time of billing, for a Deferred Payment Transaction

ACOSTA
T 0641

- **Effective through 16 April 2010,** upon Cardholder request, for a Transaction under US $25 completed at a Point-of-Transaction Terminal with Contactless Payment capability
- **Effective 17 April 2010,** upon Cardholder request, for a Transaction less than or equal to US $25 completed at a Point-of-Transaction Terminal with Contactless Payment capability
- Upon Cardholder request, for a Small Ticket Transaction or a No Signature Required Transaction
- At the time of the Transaction, for a Transaction completed at a Point-of-Transaction Terminal

ID#: 010410-010410-0005130

### Transaction Receipt Delivery for Dynamic Currency Conversion Transactions - U.S. Region 5.2.N

In the U.S. Region, if a T&E Express Service Transaction involves Dynamic Currency Conversion (DCC), a Lodging Merchant or Car Rental Company must send the Cardholder a copy of the Transaction Receipt through the postal service within 3 business days, as specified in the "Dynamic Currency Conversion - Additional Requirements for T&E Express Service Transactions - U.S. Region" table.

ID#: 010410-010410-0005134

# Transaction Deposits

## General Transaction Deposit Requirements

### Transaction Deposit in Transaction Country

A Merchant, except a military base or an International Airline, must deposit all Transaction Receipts in the Transaction Country.

ID#: 010410-010410-0002979

### Cruise Line Exceptions

A Cruise Line may deposit on-board Transactions at various ports-of-call. The Transaction Date is the Deposit Date or date of disembarkation, if the Transactions are deposited at the end of the cruise.

ID#: 010410-010410-0002980

### Deposit Requirements - U.S. Region

If a Transaction is authorized, a U.S. Merchant must follow normal Deposit requirements for T&E Advance Deposit Transactions, Installment Billing Transactions, Lodging Merchants, Cruise Line Merchants, and Car Rental Companies.

ID#: 010410-010410-0008673

© 2010 Visa. All Rights Reserved.

ACOSTA
T 0642

**Substitute Transaction Receipt Data Requirements - Data-Captured Retail Transactions (May be used only to satisfy Retrieval Request Reason Code 30, "Request Due to Cardholder Inquiry") - U.S. Region**

| Required Data | Data-Captured Retail Transactions |
|---|---|
| Account Number | X |
| Card Expiration Date | X |
| Cardholder Name | If available |
| Transaction Date | X |
| Transaction Time | optional |
| Authorization Code | X |
| Merchant Name | X |
| Merchant Location | X |
| Description | Merchandise or service |
| Store Department | Optional |
| "Ship to" Address | If applicable |

ID#: 010410-171009-0003545

© 2010 Visa. All Rights Reserved.

ACOSTA
T 0643

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-61033-CIV-UNGARO

DANIEL TURNER,

      Plaintiff,

v.

BEN & GABBY'S, INC.,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

    THIS CAUSE is before the Court upon Defendant's Motion to Dismiss, filed on July 29, 2008 (D.E. 5). Plaintiff filed his Response in opposition on August 20, 2008 (D.E. 6).

    THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, this case arises out of purported violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). In its Motion, Defendants argues that Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted. (Def.'s Mot. 1.)

    In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). When considering a motion to dismiss, the Court must liberally construe the complaint in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). At this stage of the litigation, the Court must consider the allegations contained in the plaintiff's complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). While a complaint does not need to set forth detailed factual allegations to survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65

(2007) (citations omitted).  In practice, to adequately state a claim, "plaintiffs must do more than state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F. 3d 1250, 1263 (11th Cir. 2004).  Moreover, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Id.* at 1262-63 (citation and quotation marks omitted).

In his Complaint, Plaintiff alleges that Defendant has violated FACTA by providing him with an electronically printed credit card receipt that contained (1) more than the last five digits of his credit card number and (2) the expiration date of his credit card.  (Compl. ¶¶ 13-14.) FACTA states that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g).  In its Motion, Defendant argues that the Complaint should be dismissed because Plaintiff's claim is based upon the "merchant copy" of the credit card receipt intended to be retained by Defendant, not the "customer copy" intended to be provided to Plaintiff.  (Def.'s Mot. 1-2.)  Therefore, Defendant posits, the "merchant copy" of a credit card receipt does not fall within the scope of FACTA because it is not a "receipt provided to the cardholder," *see* 15 U.S.C. § 1681c(g), and the Complaint must be dismissed.

Plaintiff maintains that FACTA's provisions apply to "any receipt provided to the cardholder at the point of the sale or transaction," *see* 15 U.S.C. § 1681c(g), and do not exempt a printed receipt merely because it is labeled "merchant copy." (Pl.'s Mot. 2.)  The Court first notes that this appears to be an issue of first impression in this circuit.  As the parties disagree on the meaning of FACTA, the Court must engage in statutory interpretation.  In construing a statute, the Court first looks to the plain language of the statute.  *See Albernaz v. U.S.*, 450 U.S. 333, 336 (1981).  Words are interpreted with their ordinary and plain meaning because the Court assume that Congress uses words in a statute as they are commonly understood.  *See U.S. v.*

2

*McLeod*, 53 F.3d 322, 324 (11th Cir. 1995).  Review of legislative history is unnecessary "unless a statute is inescapably ambiguous." *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam).

The Court finds that the plain language of § 1681c(g) is unambiguous, as it restricts the statute's scope to electronically printed receipts provided to the cardholder at the point of the sale or transaction.  The common meaning of the transitive verb "provide"–the key to the parties' dispute over the scope of the statute–is "to furnish or supply."  The American Heritage Dictionary of the English Language (4th ed. 2004).  Accordingly, for a receipt to be "provided to the cardholder," the cardholder must be furnished or supplied with it.  *See id.*  In the majority of credit card transactions, the merchant prints two copies of the credit card receipt, one for the cardholder to sign and return to the merchant (the "merchant copy") and one for the cardholder to retain as a receipt or record (the "customer copy").  Thus, while both copies of the credit card receipt are shown to the customer, the merchant copy cannot be said to be "provided to the cardholder" because the cardholder is supposed to return the merchant copy to the merchant.  *See* 15 U.S.C. § 1681c(g).  The cardholder is only furnish or supplied with the customer copy, as that copy of the receipt is given to the cardholder to do what he pleases.

Plaintiff appears to argue that the FACTA's provisions apply every time a receipt is "presented to" the consumer.  (*See* Pl.'s Resp. 5-6.)  The Court disagrees, for the merchant copy of a receipt is "presented to" the cardholder for his signature but is not "provided to" such cardholder because the cardholder is not supplied with the merchant copy for retention.  The cardholder is only supplied with the customer copy.  As a result, the Court finds that the unambiguous statutory language of FACTA demonstrates that it does not apply to merchant copies of credit card receipts.  The Court notes also that other courts have specifically stated that FACTA excludes the "merchant copy" of a credit card receipt from its ambit.  *See, e.g., Ehrheart v. Bose Corp.*, 2008 WL 64491 at *4 n.4 (W.D. Pa. 2008).  The Court will not review the legislative history of FACTA because the plain meaning of the statute is clear.  *See U.S. v. Veal*,

153 F.3d 1233, 1245 (11th Cir. 1998). Thus, because Plaintiff's allegations in the Complaint are based on a merchant copy[1] of a credit card receipt issued by Defendant, the Complaint fails to state a claim upon which relief may be granted and must be dismissed.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion to Dismiss (D.E. 5) is GRANTED.

DONE AND ORDERED in Chambers, Miami, Florida, this 25th day of August, 2008.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

---

[1]   The Court notes that the credit card receipt attached to the Complaint is prominently marked "Merchant Copy." (*See* Compl., Ex. A.)

4

# EXHIBIT D



## TARGET
### EXPECT MORE PAY LESS!

CICERO - 708-863-6830
07/17/2010 06:42 PM  EXPIRES 10/15/10

ENTERTAINMENT-ELECTRONICS
008091473      VIZIO 37 IN      [ $529.00 ↓

```
              SUBTOTAL    $529.00
T = IL TAX 10.0000% on $529.00   $52.90
               TOTAL    $581.90

*5458 THANKS!  TARGET VISA    $300.00
     *0720 VISA CHARGE        $200.00
         CASH PAYMENT          $82.00
          CHANGE DUE           $0.10
```

↓ INDICATES SAVINGS

### YOU SAVED    $40.99

Target Pharmacy   We're here to help!
              9am - 9pm M-F
              9am - 6pm Sat
              9am - 6pm Sun

REC#2-0198-0732-0112-4538-8 VCD#758-757-339

### Get 5 cents off every time you use a reusable bag!

--------------------------------------



Win a
$5000
GiftCard

Tell us about your last shopping experience
at Target for a chance to win a
$5000 Target GiftCard!

Locate the Gift Registry
Kiosk and select GUEST SURVEY.
Or at home, log onto:

www.Target.com/survey
User ID:  7980 1926 8988
Password:  754 612

Cuentanos acerca de tu última experiencia
de compra en Target y tendrás la oportunidad
de ganar una tarjeta de regalo Target
GiftCard por valor de $5000.
En el kiosco del registro de regalos,
selecciona "Guest Survey" o visita
www.target.com desde tu casa e ingresa
la contraseña y N° de usuario de arriba
Normas disponibles en "Servicio al huesped"

ONE WINNER PER MONTH!
Guest must be 18 or older to enter.
Sweepstakes runs from
05/01/2010 through 10/31/2010
Complete rules at Guest
Service Desk and Target.com/survey.
(Target team and family not eligible.)

<------- CUT HERE

*Todd*    EXHIBIT 1
FOR I.D. 5/25/16   IV

TODD 000673

CASH PAYMENT    $62.00
CHANGE DUE    $0.10

↓ INDICATES SAVINGS

## YOU SAVED   $40.99

Target Pharmacy   We're here to help!
9am - 9pm M-F
9am - 6pm Sat
9am - 6pm Sun

REC#2-0198-0732-0112-4538-8 VCD#758-757-339

## Get 5 cents off every
## time you use a
## reusable bag!

--------------------------------------------



Tell us about your last shopping experience
at Target for a chance to win a
$5000 Target GiftCard!

Locate the Gift Registry
Kiosk and select GUEST SURVEY.
Or at home, log onto:

www.Target.com/survey
User ID:   7980 1926 8888
Password:   754 612

Cuéntanos acerca de tu última experiencia
de compra en Target y tendrás la oportunidad
de ganar una tarjeta de regalo Target
GiftCard por valor de $5000.
En el kiosco del registro de regalos,
selecciona "Guest Survey" o visita
www.target.com desde tu casa e ingresa
la contraseña y N° de usuario de arriba
Normas disponibles en "Servicio al huésped"

ONE WINNER PER MONTH!
Guest must be 18 or older to enter.
Sweepstakes runs from
05/01/2010 through 10/31/2010
Complete rules at Guest
Service Desk and Target.com/survey.
(Target team and family not eligible.)

<------ CUT HERE ------>



Your ticket to gift perfection.

To:_____

From:_____



With this receipt, you can
return your gift for a GiftCard.
Some items can't be returned if opened

TODD 000674

# EXHIBIT E



CICERO
CICERO, IL 60804

07/17/2010    06:42 PM
RETURN BEFORE   10/15

SALES AUDIT COPY

DRAMETTA F TODD
VISA CHARGE        M
EXPIRATION DATE:
CREDIT APPROVAL #

*0720
004319          Redacted

008 LCD TELEVISIONS        $200.00

WE APPRECIATE YOUR CREDIT PURCHASE

****.^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
*          Please charge this purchase to        *
*            My VISA CHARGE account              *
*                                                *
*                                                *
* X                                              *
*            DRAMETTA F TODD                      *
************************************************

RECEIPT ID: 2-0198-0732-0112-4538-8
TM:****8806
SR:980-664-315-222-809-331-835-290-72

Get 5 cents off every
time you use a
reusable bag!

PLACE IN MEDIA LOCATION UNDER REGISTER
GSTL-> BIND & PLACE IN MEDIA BRICK AT CLOSE

# EXHIBIT F



CICERO
CICERO, IL 60804

07/17/2010          06:42 PM
RETURN BEFORE       10/15/10



SALES AUDIT COPY

DRAMETTA TODD
TARGET VISA CHAR     M
EXPIRATION DATE:
CREDIT APPROVAL #

                                    *5458          Redacted

008 LCD TELEVISIONS
                              $300.00

WE APPRECIATE YOUR CREDIT PURCHASE

*******************************************
*                                         *
*      Please charge this purchase to     *
*  My THANKS!  TARGET VISA account        *
*                                         *
*                                         *
* X                                       *
*                                         *
*                 A TODD                  *
*******************************************

RECEIPT ID: 2-0198-0732-0112-4538-8
                      TM:****8806
SR:980-664-364-763-860-278-308-022-70

Get 5 cents off every
time you use a
reusable bag!

# EXHIBIT G



**TARGET**
EXPECT MORE PAY LESS.

```
CHICAGO SOUTH PULASKI - 773-579-2120
           4433 S PULASKI RD
           CHICAGO, IL 60632
    08/07/2010 12:27 PM EXPIRES 11/05/10
```

CLEANING SUPPLIES
```
003040141       AW FM ULTRA     T    $4.54
  AW FM ULTRA   COOL LINEN REFILL
003040261       RENUZIT SON     T    $1.89
  RENUZIT SON  2CT ADJ CITRUS SUNBURS
003040430       RENUZIT ADJ     T    $1.98
  RENUZIT ADJ  7.50Z SIMPLY VANILLA
                2 @ $0.99 ea
003050071       MURPHY OIL      T    $2.69
  MURPHY OIL    18 CT WIPES
003050432       WEIMAN          T    $3.64
  WEIMAN        30CT STNLS STEEL WIPES
003070196       CLOROX BLCH     T    $1.94
  CLOROX BLCH  96FLOZ FRESH MEADOWS
003080198       ARM N HAMMER    T   $11.89
  ARM N HAMMER 95LD PWD W/ OXICLEAN
```

HOME
```
062180252       Q SHEET SET     T   $14.99  ↓
  Q SHEET SET   JERSEY SOLID WHITE
                Saved $5.00 off $19.99
064020372       6PK WASHPACK    T    $3.99
  6PK WASHPACK WHITE
065070127       AGLAONEMA       T   $14.98
  AGLAONEMA     TERRA COTTA POT 20"
253060603       SCOTT BATH      T    $8.54
  SCOTT BATH    1000CT 12PK BATH TISS
554000642758    MFR COUPON          $0.75-
```

STATIONERY-OFFICE
```
081010244       COMP BOOK       D    $1.00
  COMP BOOK     COLORED COVER
                4 @ $0.25 ea
081042577       12CT ROSEART    D    $1.50  ↓
  12CT ROSEART COLORED PENCILS **
                3 @ $0.50 ea
081050004       100CT INDEX     D    $0.50  ↓
  100CT INDEX  4X6 RULED INDEX CARD
                Saved $0.74 off $1.24
081050075       100CT INDEX     D    $2.10  ↓
  100CT INDEX  3X5 COLORED INDEX CARD
                2 @ $1.05 ea
081121062       20CT PEN        D    $2.00
  20CT PEN      BLACK BLUE STICK NCF
                2 @ $1.00 ea
081200237       1 SUBJ NTBK     D    $6.45
  1 SUBJ NTBK   70 CT WIDE RULE
                43 @ $0.15 ea
```
```
T = IL TAX 9.7500% on  $71.07      $6.93
D = IL TAX 4.7500% on  $13.55      $0.64
                       TOTAL      $91.44

                 CASH PAYMENT     $30.00
     *5458 THANKS! TARGET VISA    $31.44
              *1104 VISA CHARGE   $30.00

         ↓ INDICATES SAVINGS

     YOU SAVED     $8.13

    Target Pharmacy   We're here to help!
              9am - 9pm M-F
              9am - 6pm Sat
              9am - 6pm Sun

  REC#2-0219-1879-0076-1848-3 VCD#755-755-845
```

Get 5 cents off every
time you use a
reusable bag!

TODD 000675

```
065070127      AGLAONEMA
   AGLAONEMA    TERRA COTTA POT 20"  T   $14.98
253060603      SCOTT BATH            T
   SCOTT BATH  1000CT 12PK BATH TISS       $8.54
554000642758   MFR COUPON
                                           $0.75-

STATIONERY-OFFICE
081010244      COMP BOOK
   COMP BOOK   COLORED COVER         D     $1.00
               4 @ $0.25 ea
081042577      12CT ROSEART
   12CT ROSEART COLORED PENCILS **   D     $1.50  ↓
               3 @ $0.50 ea
081050004      100CT INDEX
   100CT INDEX 4X6 RULED INDEX CARD  D     $0.50  ↓
               Saved $0.74 off $1.24
081050075      100CT INDEX
   100CT INDEX 3X5 COLORED INDEX CARD D    $2.10  ↓
               2 @ $1.05 ea
081121062      20CT PEN
   20CT PEN    BLACK BLUE STICK NCF  D     $2.00
               2 @ $1.00 ea
081200237      1 SUBJ NTBK
   1 SUBJ NTBK 70 CT WIDE RULE       D     $5.45
T = IL TAX  9.7500% on  $71.01            $0.64
D = IL TAX  4.7500% on  $13.55
                           TOTAL         $91.44

               CASH PAYMENT          $30.00
  *5458 THANKS!  TARGET VISA         $31.44
               *1104 VISA CHARGE     $30.00

          ↓ INDICATES SAVINGS

       YOU SAVED     $8.13

  Target Pharmacy   We're here to help!
            9am - 9pm M-F
            9am - 6pm Sat
            9am - 6pm Sun

  REC#2-0219-1879-0076-1848-3 VCD#755-755-845

  Get 5 cents off every
     time you use a
       reusable bag!
  --------------------------------
```



**Win a $5000 GiftCard**

Tell us about your last shopping experience
at Target for a chance to win a
$5000 Target GiftCard!


Locate the Gift Registry
Kiosk and select GUEST SURVEY.
Or at home, log onto:

www.Target.com/survey
User ID:  7978 0812 1992
Password:  381 517

Cuéntanos acerca de tu última experiencia
de compra en Target y tendrás la oportunidad
de ganar una tarjeta de regalo Target
GiftCard por valor de $5000.
En el kiosco del registro de regalos,
selecciona "Guest Survey" o visita
www.target.com desde tu casa e ingresa
la contraseña y N° de usuario de arriba
Normas disponibles en "Servicio al huésped"

ONE WINNER PER MONTH!
Guest must be 18 or older to enter.
Sweepstakes runs from
05/01/2010 through 10/31/2010
Complete rules at Guest

TODD 000676

# EXHIBIT H



**TARGET**
EXPECT MORE. PAY LESS.

CHICAGO SOUTH PULASKI
CHICAGO, IL 60632

08/07/2010     12:27 PM
RETURN BEFORE   11/05/10



SALES  AUDIT  COPY

DRAMETTA TODD
TARGET VISA CHAR    P          *5458
EXPIRATION DATE:
CREDIT APPROVAL #              060397            Redacted

062 SHEET ENDCAPS             $31.44

WE APPRECIATE YOUR CREDIT PURCHASE

```
*****************************************
*      Please charge this purchase to   *
*    My THANKS!  TARGET VISA account     *
*                                        *
*                                        *
*                                        *
* X                                      *
*          DRAMETTA TODD                 *
*****************************************
```

RECEIPT ID: 2-0219-1879-0076-1848-3
TM:****7193
SR:980-682-987-573-830-106-762-848-26

Get 5 cents off every
time you use a
reusable bag!

PLACE IN MEDIA LOCATION UNDER REGISTER
GSTL-> BIND & PLACE IN MEDIA BRICK AT CLOSE

# EXHIBIT I

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-----------------------------------------------------------------------

Drametta Todd, individually and on behalf
of a class,

                      Plaintiff,

       vs.

Target Corporation,

                    Defendant.

No. 1:10-cv-05598

---

## TARGET'S ANSWERS TO INTERROGATORIES

---

To:    Plaintiff Drametta Todd and her attorneys Curtis C. Warner, Warner Law Firm, LLC, Millennium Park Plaza, 155 North Michigan Avenue 560, Chicago, IL 60601; and Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Francis R. Greene, Edelman, Combs, Latturner & Goodwin, LLC, 18th Floor, 120 South LaSalle Street, Chicago, IL 60603.

Pursuant to Rule 33, Defendant Target Corporation, for its answers to the interrogatories in the Plaintiff's First Set of Discovery: (1) Requests for Admission; (2) Interrogatories; and (3) Document Production Requests to Defendant Target Corporation (Oct. 19, 2010), states:

For these answers' purposes, "Target" means Defendant Target Corporation.

### General Objections

1.    Target objects to each interrogatory to the extent that it seeks information protected by the attorney-client privilege, the work-product doctrine, or any other privilege, protection, or exemption from disclosure.

1

2. Target objects to each request and each definition or purported instruction to the extent that it requires or purports to require a duty that Target does not otherwise owe. Target will respond as required by Rule 33 or any other applicable rule or order.

3. Target likewise objects to each definition or purported instruction to the extent that it purports to restate, characterize, qualify, or modify the applicable rules. Target will respond as required by Rule 33 or any other applicable rule or order.

4. Target objects to the purported instruction, in "Definitions and Instructions," paragraph P, that "[e]ach Interrogatory contained herein is a continuing one. . . . If, after serving an answer to any Interrogatory contained herein, you obtain or become aware of any further information pertaining to such Interrogatory, you are required to serve upon Plaintiff amended answers setting forth such information." Target will supplement its answers as required by Rule 26(e) or any other applicable rule or order.

5. Target objects to the boilerplate "Definitions and Instructions" that define terms not used in the interrogatories.

6. Target objects to the repeated references to the exhibited documents as "receipts." Those exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND &

2

PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

### Answers

**No. 1**

*Interrogatory:* State the number of receipts in the form of Exhibits 1–3 that Target printed between September 2008 and September 10, [2010].[1]

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale

---

[1]This interrogatory as served asked, "State the number of receipts in the form of Exhibits 1-3 that Target printed between September 2008 and September 10, 2008." When Target's attorney Brian Melendez asked the Plaintiff's attorneys to check the dates in the first two interrogatories, the Plaintiff's attorney Francis Greene replied, "Thank you for bringing to our attention the scrivener's errors in the first two interrogat[or]ies. Please treat those interrogatories as seeking information for the period September 2, 2008 to September 2, 2010."

receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Target further objects to this interrogatory because it seeks information that is not relevant to any Party's claim or defense, since the number of sales-audit copies that were "printed" necessarily includes all the sales-audit copies that were stored under the register for the day to be forwarded to Target's central sales-audit office, and were not left in the cardholder's hands.

Subject to these objections and the other general objections, and without waiving these objections or the other general objections:

Target cannot ascertain the requested number precisely, since Target does not keep direct records of which transactions result in a sales-audit copy being printed or of how many such copies are printed. But Target's best estimate at this time is that about 12 million sales-audit copies were printed during the period to which this interrogatory relates. This number includes all the sales-audit copies that were stored under the register for the day to be forwarded to Target's central sales-audit office, and were not left in the cardholder's hands, as well as any copies that a cardholder may have walked off with, which would be a smaller number.

The estimate of 12 million sales-audit copies nationwide over a two-year period is extrapolated from a two-month sample at a typical Target store in Denton, Texas, in September–November 2010. The actual number is probably within 30 percent of the estimate — that is, between 8.4 million and 15.6 million.

4

**No. 2**

*Interrogatory:* Identify all persons who provided Target a debit card or a credit card in connection with a transaction or sale that resulted in a receipt in the form of Exhibits 1–3 being printed between September 2, 2008 and September 10, [2010].[2]

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Target further objects to this interrogatory because it seeks information that is not relevant to any Party's claim or defense, since the sales-audit copies that were "printed" necessarily include all the sales-audit copies that were stored under the register for the

---

[2]This interrogatory as served asked, "State the number of receipts in the form of Exhibits 1-3 that Target printed between September 2008 and September 10, 2008." When Target's attorney Brian Melendez asked the Plaintiff's attorneys to check the dates in the first two interrogatories, the Plaintiff's attorney Francis Greene replied, "Thank you for bringing to our attention the scrivener's errors in the first two interrogat[or]ies. Please treat those interrogatories as seeking information for the period September 2, 2008 to September 2, 2010."

day to be forwarded to Target's central sales-audit office, and were not left in the cardholder's hands.

Target further objects to this interrogatory because it is premature, since this Court has not yet determined whether to certify this action as a class action.

Target further objects to this interrogatory because it is unduly burdensome, please see Answer No. 11, and because the request for each cardholder's "name, last known address, [and] telephone number," (Plaintiff's First Set of Discovery, "Definitions and Instructions," para. D at 2 (Oct. 19, 2010)), invades each such cardholder's privacy.

## No. 3

*Interrogatory:* Identify the software, including the version of the software, the date the software was installed, and the name, business address and business telephone number of the company that created and/or sold the software, that was used in the point of sale terminals that printed Exhibits 1, 2, and 3.

*Answer:* The software in the cash registers was custom-built by Target Corporation and Research Computer Services, then of Dayton, Ohio, now a division of NCR Corporation, 3097 Satellite Boulevard, Duluth, GA 30096-5810 (ph. 800.225.5627). The software was built on a point-of-sale application base created by Research Computer Services, with minor components created by other third-party vendors, such as Microsoft. The NCR software on which Target's customized product was based is their Advanced Store product, and is currently built upon the RCS RTE Visual POS Designer Runtime32 foundation, dated September 18, 2007 (SDK Release 2007.09.18, Designer Version 5.3.13, Foundation Library Version 5.2.8).

6

**No. 4**

*Interrogatory:* Identify all Target stores that were not using the same software as the software used at the point of sale terminals that printed <u>Exhibits 1–3</u> between September 2, 2008 and September 2, 2010[.]

*Answer:* None. All Target stores were using the same or similar software,

although upgrades to that software may have been implemented at different times in

different stores.

**No. 5**

*Interrogatory:* Identify all companies that processed Target's credit and debit card transactions between September 2, 2008 and September 2, 2010.

*Answer:* American Express Company, P.O. Box 981540, El Paso, TX 79998-1540

(800.528.5200).

Merchant Services, Bank of America, N.A., AW5-505-01-40, P.O. Box 2485,

Spokane, WA 99210-2485 (ph. 800.228.5882).

Chase Paymentech Solutions, LLC, Building Two, 14221 Dallas Parkway, Dallas,

TX 75254 (ph. 800.824.4313).

Discover Network, DFS Services LLC, P.O. Box 3015, New Albany, OH 43054

(ph. 800.347.2000).

Master Card Worldwide, 2000 Purchase Street, Purchase, NY 10577 (ph.

800.622.7747).

Visa Inc., P.O. Box 8999, San Francisco, CA 94128-8999 (ph. 800.847.2911).

**No. 6**

*Interrogatory:* State the name, job title, and business address of all persons who approved the use by Target of the software associated with the point of sale terminals that printed receipts in the form of <u>Exhibits 1–3</u>. If any such persons are no longer employed by Target, provide his or her last known home address and last known telephone number.

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Subject to this objection and the other general objections, and without waiving this objection or the other general objections:

The software in use when Exhibits 1–3 were printed was a version rolled out in Spring 2010. That version was approved by a representative from the testing team, David Neu; a representative from the release team, Ramesh Babu; a representative from the software-development team, Kevin Jansen; and a representative from the Store Operations department, Karla Erlandson. These employees' address is Target

Corporation, 1000 Nicollet Mall, Minneapolis, MN 55403. They can be contacted only through Target's attorneys in this matter.

The Spring 2010 software rollout did not affect the expiration date being printed on a sales-audit copy. Target has undertaken a diligent search but cannot determine when the change to suppress the expiration date on the register receipt occurred, or who approved it. Target has determined that it stopped printing a sales-audit copy for every credit- or debit-card transaction on October 30, 2003. At that time, Target restricted the printing of a sales-audit copy only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad (or the PIN pad is out of order).Target cannot tell whether that change affected whether the expiration date was printed on a sales-audit copy. The employees who researched this interrogatory were Bruce Christensen, Organizational Effectiveness Consultant, Target Corporation, 1000 Nicollet Mall, Minneapolis, MN 55403; and Terry Mackin, Senior Group Manager, Delivery Services, Mail Stop CC-1622, 33 South Sixth Street, Minneapolis, MN 55402. These employees can be contacted only through Target's attorneys in this matter.

**No. 7**

*Interrogatory:* Excluding cashiers and store managers, state the name, job title, and business address of all Target employees, who knew prior to September 2, 2010 that the software used in Target's point of sale terminals were printing expiration dates on receipts in the form of Exhibits 1–3. If any such persons are no longer employed by Target, provide his or her last known home address and last known telephone number.

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not

9

intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Target further objects to this interrogatory because it is unduly burdensome, in that it seeks "the name, job title, and business address" of many individual employees over a period of several years, including one or more employees in the cash office at each Target store. Target will list the jobs whose incumbents worked with sales-audit copies and would likely have been aware in connection with their roles that an expiration date was printed on a sales-audit copy.

Subject to these objections and the other general objections, and without waiving these objections or the other general objections:

The cash-office team members in each Target store; Sales Auditors and their supervisors in the Finance department at Target headquarters; Retail Card Services team members and their leadership in the Target Financial Services division; and POS Development Business Analysts, POS Development Engineers, and POS testing-team members in the Target Technology Services division.

**No. 8**

*Interrogatory:* Identify all persons who approved of a credit card or debit card's expiration date being printed on receipts in the form of Exhibits 1–3.

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Target further objects to this interrogatory because it rests on the incorrect assumption that Target made an isolated and unilateral decision to "approve[] of a credit card or debit card's expiration date being printed on receipts [sic] in the form of Exhibits 1–3."

Subject to these objections and the other general objections, and without waiving these objections or the other general objections:

Target did not make an isolated and unilateral decision to "approve[] of a credit card or debit card's expiration date being printed on receipts [sic] in the form of Exhibits 1–3." The expiration date is printed on the exhibited sales-audit copies because Visa and

11

other credit- and debit-card networks whose cards Target accepts require that Target

maintain that information in case of a chargeback or other retrieval request from the card

issuer or the card network. Please see Answer No. 14 below. Target began accepting

charge cards in 1971, and cannot determine four decades later who made that decision.

Target does not know the process that the card networks followed in adopting their

requirement that merchants maintain information about a card's expiration date in case

of a chargeback or other retrieval request from the card issuer or the card network, or

who participated in that decision.

**No. 9**

Interrogatory: Between September 2, 2008 and September 2, 2010, please state
whether Target had a document retention policy with respect to receipts in the form of
Exhibits 1–3, and, if so, explain in detail what the policy was.

Answer: Target restates its General Objection No. 6 with respect to this

interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not

intended for the cardholder, but rather must be maintained by a merchant who accepts a

credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy

is not printed for a PIN transaction, only for a signature transaction where the cardholder

so requests or where the cardholder leaves blank the signature box on the PIN pad. Each

such copy is clearly labeled "SALES AUDIT COPY," and concludes with the

instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND &

PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale

receipt that is provided to the cardholder, does not itemize merchandise and cannot be

used by the cardholder to return merchandise.

12

Subject to this objection and the other general objections, and without waiving this objection or the other general objections:

Yes. The answer to this interrogatory may be derived or ascertained from Target's business records, particularly the Target Financial Services Records Retention Schedule, a copy of which is being produced in response to the accompanying requests for production. The schedule provides that records relating to chargebacks and retrievals, which includes sales-audit copies, must be retained for 13 months.

**No. 10**

*Interrogatory:* State whether Target has a copy in any format of receipts printed between September 2, 2008 and September 2, 2010 in the form of Exhibits 1–3.

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Target further objects to this interrogatory as overly broad because it seeks information that is not relevant to any Party's claim or defense, since the sales-audit

13

copies printed during the requested period necessarily include all the sales-audit copies that were stored under the register for the day to be forwarded to Target's central sales-audit office, and were not left in the cardholder's hands.

Subject to these objections and the other general objections, and without waiving these objections or the other general objections:

Yes. The relevant records-retention policy, the Target Financial Services Records Retention Schedule, provides that sales-audit copies must be retained for 13 months. *See* Answer No. 9. When the complaint was served in September 2010, the oldest sales-audit copies then being retained dated back to August 2009. Target is preserving those records while this lawsuit is pending.

**No. 11**

*Interrogatory:* State whether Target has records sufficient to identify the identity of any or all persons who provided Target a debit or credit card in connection with a point of sale transaction between September 2, 2008 and September 2, 2010 and who received a receipt in the form of Exhibits 1–3.

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale

14

receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Subject to this objection and the other general objections, and without waiving this objection or the other general objections:

No. With some exceptions, Target generally cannot identify "persons who provided Target a debit or credit card in connection with a point of sale transaction between September 2, 2008 and September 2, 2010 and who received a receipt [sic] in the form of Exhibits 1–3."

Target can readily identify any such person who initiated a chargeback — that is, who transmitted to a creditor a written notice of a billing-error dispute in connection with the cardholder's use of his or her card at a Target store, pursuant to Consumer Credit Protection Act § 161 [15 U.S.C. § 1666] — since the sales-audit copy is routinely retrieved and provided during the chargeback process. But that copy is not "provided to the cardholder at the point of the sale or transaction."

Target cannot identify any such person who may have received a sales-audit before August 2009 because Target retains sales-audit copies only for 13 months. When the complaint was served in September 2010, the oldest sales-audit copies then being retained dated back to August 2009, so Target cannot identify any such person who may have received a sales-audit copy before then. (Target is preserving those records while this lawsuit is pending.)

For "persons who provided Target a debit or credit card in connection with a point of sale transaction between [August 2009] and September 2, 2010," and who did not initiate a chargeback, Target may be able to identify such a person in some cases. But

15

the process of identifying the person and establishing that he or she "received a receipt [sic] in the form of <u>Exhibits 1–3</u>" is very resource-intensive. Target would first need to ascertain that a sales-audit copy was generated, but is missing from the "media brick" that was forwarded to Target's central sales-audit office. Target cannot ascertain this information electronically, but would need to manually search the retained sales-audit copies and compare them to each cash register's electronic journal, which would involve searching two years of records from 1,753 stores with an average of 34 registers per store. Target would then need to ascertain that the sales-audit copy was received and kept by the cardholder, rather than returned to the cashier or misplaced in some way other than the cardholder walking off with it. One way of checking whether a sales-audit copy was received and kept by the cardholder is by viewing a security-camera recording of the transaction; but such a recording is not always available, and would be retained only for 30 days except in special circumstances. Without a security-camera recording, the only other way of checking whether a sales-audit copy was received and kept by the cardholder is by asking the cardholder. Target can identify and contact a Target cardholder on its own but, for a cardholder who is using a credit or debit card issued by creditor other than Target, Target would need the card issuer or the card network to identify the cardholder.

**No. 12**

*Interrogatory:* State the name, job title, and business address of all persons, who approved the printing of a credit card's or debit card's expiration date on receipts in the form of <u>Exhibits 1–3</u>. If any such persons are no longer employed by Target, provide his or her last known home address and last known telephone number.

16

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Target further objects to this interrogatory because it rests on the incorrect assumption that Target made an isolated and unilateral decision to "approve[] of a credit card or debit card's expiration date being printed on receipts [sic] in the form of Exhibits 1–3."

Subject to these objections and the other general objections, and without waiving these objections or the other general objections:

Please see Answer No. 8.

## No. 13

*Interrogatory:* Identify all facts supporting each of Target's affirmative defenses and identify every person, including stating their job title and business address, and if no longer an employee of Target, their last known home address and their last known telephone number, who would have knowledge of the underlying facts of each affirmative defense, and identify any documents upon which each affirmative defense is based upon [sic].

*Answer:*

**Second defense: Wrong receipts.** The documents that the Plaintiff took away from Target were not the "receipt provided to the cardholder at the point of the sale or transaction" within the meaning of 15 U.S.C. § 1681c(g)(1). They are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. The cash register prompts the cashier to ask the cardholder to "Sign Paper Copy." Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise. The persons knowledgeable about this affirmative defense include John Deters, Target, Mail Stop CC-14, 33 South Sixth Street, Minneapolis, MN 55402 (ph. 612.304.2444); Walt Mahanna, Target, NCB-0307, 7000 Target Parkway, Brooklyn Park, MN 55445 (ph. 763.440.5542); and Nicole Nilsen, TPS 20-470, 1000 Nicollet Mall, Minneapolis, MN 55403 (ph. 612.696.2122). Mr. Deters, Mr. Mahanna, and Ms. Nilsen can be contacted only through Target's attorneys. Target also believes, based on her prior litigation against other merchants, that the Plaintiff obtained the sales-audit copies negligently or imin order to foment litigation.

18

All documents that support this affirmative defense are being produced in response to Document Production Request No. 10. Discovery and investigation continue.

**Third defense: Contributory negligence.** If Target was negligent (which Target denies) in letting the Plaintiff take the sales-audit copies, then the Plaintiff was contributorily negligent. Please see the facts set forth above under the second defense, "wrong receipts." The Plaintiff's negligence exceeds any alleged negligence on Target's part. The persons knowledgeable about this affirmative defense include Plaintiff Drametta Todd, 6347 South Richmond, Chicago, IL 60629 (ph. 773.653.3218). All documents that support this affirmative defense are being produced in response to Document Production Request No. 10. Discovery and investigation continue.

**Fourth defense: Compliance.** Target complied with all applicable statutes and regulations. The persons knowledgeable about this affirmative defense include Walt Mahanna, Target, NCB-0307, 7000 Target Parkway, Brooklyn Park, MN 55445 (ph. 763.440.5542). Mr. Mahanna can be contacted only through Target's attorneys. All documents that support this affirmative defense are being produced in response to Document Production Request No. 10. Discovery and investigation continue.

**Fifth defense: Estoppel.** The Plaintiff is estopped by her own conduct from recovering on her claims, or any of them. Please see the facts set forth above under the second defense, "wrong receipts." The persons knowledgeable about this affirmative defense include Plaintiff Drametta Todd, 6347 South Richmond, Chicago, IL 60629 (ph. 773.653.3218). All documents that support this affirmative defense are being produced in response to Document Production Request No. 10. Discovery and investigation continue.

**Sixth defense: Unclean hands.** The Plaintiff seeks relief when her own hands are unclean. Please see the facts set forth above under the second defense, "wrong receipts." The Plaintiff's own unclean hands bar her from recovering on her claims, or any of them. The persons knowledgeable about this affirmative defense include Plaintiff Drametta Todd, 6347 South Richmond, Chicago, IL 60629 (ph. 773.653.3218). All documents that support this affirmative defense are being produced in response to Document Production Request No. 10. Discovery and investigation continue.

**No. 14**

*Interrogatory:* If not all receipts issued by Target disclose a debit card's or credit card's expiration date, state what caused the expiration date to be printed on Exhibits 1–3.

*Answer:* Target restates its General Objection No. 6 with respect to this interrogatory. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

Subject to this objection and the other general objections, and without waiving this objection or the other general objections:

20

Target does not print the expiration date on any receipt that is electronically printed and is provided to the cardholder at the point of the sale or transaction. The exhibits are not "receipts"; they are sales-audit copies, which are not intended for the cardholder, but rather must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer. A sales-audit copy is not printed for a PIN transaction, only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad. Each such copy is clearly labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE." The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

The expiration date is printed on the exhibited sales-audit copies because Visa and other credit- and debit-card networks whose cards Target accepts require that Target maintain that information in case of a chargeback or other retrieval request from the card issuer or the card network.

As to objections:

November 30, 2010.

JOHNSON & BELL, LTD.

Garrett L. Boehm
Justin H. Volmert
Suite 2700
33 West Monroe Street
Chicago, IL 60603-5404
Ph. 312.372.0770
Fax 312.372.9818

in association with

FAEGRE & BENSON LLP
Michael A. Ponto, No. 203944 (Minn.)
Brian Melendez, No. 223633 (Minn.)
    (application for admission pro hac vice
    pending)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Ph. 612.766.7309
Fax 612.766.1600

Attorneys for Defendant
    Target Corporation

22

As to answers:

Defendant Target Corporation signs these answers, under oath, as Rule 33 provides, by and through its authorized representative whose signature appears below. These answers are based on information available from business records and other documents in Target's possession, custody, or control, and on the knowledge or information furnished by Target's employees, attorneys, and other agents, and do not necessarily reflect the personal knowledge of the individual who is signing the answers on Target's behalf.

November 30, 2010.

TARGET CORPORATION

By John Deters
Engineering Consultant
Target Corporation

The foregoing was sworn to before me and subscribed in my presence this day, November 30, 2010:

Seal

Notary Public

fb.us.6035688.04

23

# EXHIBIT J

**Certified Copy**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DRAMETTA TODD, individually
and on behalf of a class

Plaintiff,

vs.                                        Case No. 10 C 5598

TARGET CORPORATION,

Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

THIS TRANSCRIPT MAY CONTAIN CONFIDENTIAL

PORTIONS WHICH ARE NOT YET DESIGNATED

**30(b)(6) ORAL DEPOSITION OF**

**KRISTEN J. COOK**

January 24, 2011
2:34 p.m.

Faegre & Benson, LLP
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, Minnesota

Rebecca L. Klanderud, Certified Shorthand Reporter



ESQUIRE
an Alexander Gallo Company

Telephone:   312.782.8087
Toll Free:   800.708.8087
Facsimile:   312.704.4950

311 Monroe Street
Suite 1200
Chicago, IL 60606

MAY CONTAIN CONFIDENTIAL PORTIONS

---

**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

------------------------------
DRAMETTA TODD, individually   : Case No.
and on behalf of a class      : 10 C 5598
      Plaintiff,              :
vs.                           :
TARGET CORPORATION,           :
      Defendant.              :
------------------------------

* * *

THIS TRANSCRIPT MAY CONTAIN CONFIDENTIAL
PORTIONS WHICH ARE NOT YET DESIGNATED
* * *
30(b)(6) ORAL DEPOSITION OF
TARGET CORPORATION
TAKEN THROUGH ITS REPRESENTATIVE
KRISTEN J. COOK
ON MONDAY, JANUARY 24, 2011
MINNEAPOLIS, MINNESOTA
* * *

---

**2**

* * *

30(b)(6) Oral Deposition of Target
Corporation, taken through its representative,
KRISTEN J. COOK, at the law offices of Faegre &
Benson, LLP, 2200 Wells Fargo Center, 90 South
Seventh Street, Minneapolis, Minnesota on
Monday, January 24, 2011, commencing at 2:34
p.m. before Rebecca L. Klanderud, a Certified
Shorthand Reporter.

* * *

---

**3**

1  APPEARANCES:
2      WARNER LAW FIRM, LLC
3      BY:  CURTIS C. WARNER, ESQUIRE
4          Suite 560
5          155 North Michigan Avenue
6          Chicago, Illinois 60601
7          312.238.9820
8          Counsel for Plaintiff
9      EDELMAN, COMBS, LATTURNER &
10         GOODWIN, LLC
11     BY:  CATHLEEN M. COMBS, ESQUIRE
12         18th Floor
13         120 South LaSalle Street
14         Chicago, Illinois 60603
15         312.739.4200
16         Counsel for Plaintiff
17     FAEGRE & BENSON, LLP
18     BY:  BRIAN MELENDEZ, ESQUIRE
19         2200 Wells Fargo Center
20         90 South Seventh Street
21         Minneapolis, Minnesota 55402
22         612.766.7000
23         Counsel for Defendant
24             * * *
25

---

**4**

1  INDEX:
2  EXAMINATION:                     PAGE
3  By Mr. Warner . . . . . . . . . .  5, 54
4  By Mr. Melendez . . . . . . . . . .  143
5             * * *
6  EXHIBITS:
7  TARGET EXHIBITS:            PAGE MARKED
8  Exhibit 17  Bates Nos. Acosta T0630 - 0643   18
9  Exhibit 18  Bates Nos. Acosta T0623 - 0629   25
10 Exhibit 19  Security Rule and Procedures -
11             Merchant Edition, January 2009   28
12 Exhibit 20  Bates No. Todd T0357            31
13 Exhibit 21  Bates Nos. Todd T0431 - T0432   37
14 Exhibit 22  Rules for Visa Merchants Card
15             Acceptance and Chargeback
16             Management Guidelines            39
17             * * *

---



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Kristen J. Cook                                              January 24, 2011

MAY CONTAIN CONFIDENTIAL PORTIONS

---

13

1  he's going. Either you understand his
2  question--
3      THE WITNESS: Okay.
4      MR. MELENDEZ: -- or you don't. If
5  you don't, let him know. If you do, answer it.
6      THE WITNESS: Okay.
7      MR. MELENDEZ: Okay?
8  BY MR. WARNER:
9      Q.  I'm just here to listen. You can ask
10 questions.
11     Okay. Are you familiar then with --
12 are you familiar with Visa's rules as --
13 regarding charge-backs?
14     A.  From high-level in the U.S.
15     Q.  Okay. Well, what does that mean,
16 "high-level in the U.S."?
17     A.  Different parties within Target could
18 provide you individual charge-back code
19 information that can provide you a broad scope
20 view of what's required (witness indicating).
21     Q.  Of a general view?
22     A.  Uh-huh.
23     THE COURT REPORTER: Yes.
24     THE WITNESS: Yes.
25 BY MR. WARNER:

---

14

1      Q.  Okay. What is your general view of
2  Visa's charge-back rules?
3      A.  So the charge-back rules require that
4  we keep and maintain certain information to
5  provide for retrieval requests and in the case
6  of charge-backs.
7      Q.  You've produced some documents today
8  regarding Visa. They're labeled Acosta T630
9  through Acosta T643.
10     Are those documents that you provided
11 your counsel?
12     A.  Yes.
13     Q.  Okay. Do you yourself obtain those
14 documents from the card providers?
15     A.  I did.
16     Q.  Okay. Who did you talk to at Visa or
17 if you did talk to anyone at Visa regarding the
18 charge-back requirements?
19     A.  I did not speak with them regarding
20 the charge-back requirements. I spoke with them
21 to obtain copies of the rules.
22     Q.  Do you know if Target had in its
23 possession copies of the rules that -- these
24 Acosta documents, as we've been calling them,
25 prior to the filing of this litigation?

---

15

1      A.  Yes.
2      Q.  Okay. Where were they kept?
3      A.  We have printed out relevant
4  sections, and some versions were held on our --
5  on our team's drive.
6      Q.  Okay. But these documents were not
7  held on the team's drive?
8      A.  (Witness indicating.)
9          No.
10     Q.  So you needed to obtain them from
11 Visa, correct?
12     A.  Correct.
13     Q.  Can you show me where in those
14 documents that it states that the information
15 regarding expiration date needs to be printed on
16 a receipt?
17     MR. MELENDEZ: Object to the form.
18     You can answer.
19     THE WITNESS: Sure. I think with
20 Visa, there's a distinction. So for the
21 cardholder receipt that we give to the
22 cardholder, we do not print the expiration date
23 on the receipt. However, for purposes of the
24 charge-back in these documents, it does
25 reference the need to have that information and

---

16

1  provide it to successfully respond.
2  BY MR. WARNER:
3      Q.  But is there anything in there
4  specifically that says that it has to be printed
5  on a receipt?
6      MR. MELENDEZ: Object to the form.
7      You can still answer.
8      THE WITNESS: For purposes of the
9  card association rules, they would not define a
10 retrieval request as a receipt.
11 BY MR. WARNER:
12     Q.  I'm asking you where in the rules
13 does it say that an expiration date must be
14 printed on a receipt for retrieval back
15 purposes?
16     MR. MELENDEZ: Object to the form.
17     THE WITNESS: So what it does state
18 here on Table 76 for both the 2008, May and
19 November riles is that a card expiration date
20 needs to be provided with a retrieval request.
21 BY MR. WARNER:
22     Q.  Okay.
23     A.  And a retrieval request, the way that
24 we respond to those is by -- pardon me. Give me
25 one second to find a relevant document.

---



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

MAY CONTAIN CONFIDENTIAL PORTIONS

## 17

1 　　MR. MELENDEZ: What are you looking
2 for?
3 　　THE WITNESS: We print a copy from
4 the Signature Storage and Retrieval System and
5 send it back to our bankcard processor, BAMS,
6 who fulfills that retrieval request to — there
7 it is — to Visa.
8 　　So this, for example, is an example
9 on T09 — 0209, that this document would be
10 printed and then sent over to Bank of America
11 Merchant Services, who's our Visa processor, and
12 then they would communicate this information
13 back to Visa. That's how the retrieval process
14 is fulfilled (witness indicating).
15 　　MR. WARNER: Could we have the
16 document that she has, the Acosta documents
17 marked as an exhibit?
18 　　Can you mark those, please?
19 　　THE WITNESS: They're part of this
20 Number 4.
21 　　MR. WARNER: No. The Acosta
22 documents.
23 　　MR. MELENDEZ: No. He's asking about
24 something different. Remember, you've got to
25 listen to what he's referring to.

## 18

1 　　MR. WARNER: Actually, I was asking
2 the court reporter that.
3 　　THE WITNESS: Oh.
4 　　MR. WARNER: If we can have that
5 marked as an exhibit.
6 　　　　* * *
7 　　(Whereupon, Deposition Exhibit Number
8 　　17 was marked for identification.)
9 　　　　* * *
10 BY MR. WARNER:
11 　　Q. All right. In Exhibit 17, can you
12 pinpoint a statement from Visa where it says
13 that the expiration date must be printed on a
14 receipt?
15 　　MR. MELENDEZ: Objection, asked and
16 answered.
17 　　THE WITNESS: (Witness indicating.)
18 　　MR. WARNER: I don't think I have an
19 answer, Counsel.
20 　　MR. MELENDEZ: Actually, three
21 answers, but you can answer it again if you'd
22 like.
23 　　THE WITNESS: In the document, it
24 doesn't specifically say that it need be
25 printed. In reality, that's the way that our

## 19

1 processors can accept the document is when it's
2 printed.
3 BY MR. WARNER:
4 　　Q. You just need to have the information
5 for the expiration date, correct, to provide to
6 the — to Visa for charge-backs, correct?
7 　　A. In addition to many other fields.
8 　　Q. Correct.
9 　　Currently, if we look at the exhibit
10 — it's Bates-stamped T 360, there's — I can't
11 remember what exhibit this is but . . .
12 　　A. (Witness indicating.)
13 　　14.
14 　　Q. Yeah. Okay. 14.
15 　　Exhibit 14 doesn't have an expiration
16 date, correct?
17 　　A. Yes, it does not.
18 　　Q. Okay. Let me ask the question again.
19 　　It does not have an expiration date,
20 correct, on Exhibit 14?
21 　　A. Yes.
22 　　Q. No expiration date, correct?
23 　　A. (Witness indicating.)
24 　　MR. MELENDEZ: Answer out loud.
25 　　THE WITNESS: Yes.

## 20

1 BY MR. WARNER:
2 　　Q. Okay. So how does Target now do
3 charge-backs since they're not printing the
4 expiration date on the sales audit chit?
5 　　A. So there's — these copies that were
6 printed at the point of sale, these copies at
7 the point of sale do not show the register
8 receipt (witness indicating) or — I'm sorry —
9 do not show the expiration date.
10 　　Number 209, which is printed from our
11 Signature Storage and Retrieval System — sorry
12 (witness indicating) — within Exhibit 4.
13 　　MS. COMBS: Okay.
14 　　THE WITNESS: — does show the
15 expiration date.
16 BY MR. WARNER:
17 　　Q. So Target now has a system in place
18 that captures the consumer's signature?
19 　　A. Uh-huh.
20 　　Q. Yes?
21 　　A. Yes.
22 　　Q. Okay. And it's stored
23 electronically, correct?
24 　　A. Yes.
25 　　Q. Okay. And that electronic version of



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

---

### 25

1  Q.  Do you know when that change was
2  made?
3      A.  I don't.
4      Q.  Do you know who might know?
5      A.  I do, and I don't have it here with
6  me, but, yeah.  My team has that information.
7      Q.  Okay.
                      *   *   *
9      (Whereupon, an off-the-record
10      discussion was had.)
              *   *   *
12  BY MR. WARNER:
13      Q.  All right.  I want you to take a look
14  at these documents that are labeled T 623 Acosta
15  through Acosta T 629.
                  *   *   *
17      (Whereupon, Deposition Exhibit Number
18      18 was marked for identification.)
              *   *   *
20  BY MR. WARNER:
21      Q.  Take a look at that.
22      Is that something that the Acosta
23  documents that you provided your — 18, that you
24  provided your counsel?
25      A.  Yes.

### 26

1      Q.  Okay.  Where did — did you obtain
2  those documents for your counsel?
3      A.  I did.
4      Q.  And where did you obtain those
5  documents from?
6      A.  MasterCard's website.
7      Q.  Okay.  Did — is the — same question
8  like regarding the Visa.
9      Is there any statement in the
10  guidelines that state that an expiration date
11  needs to be printed on a receipt?
12      A.  No, similar to the — to the Visa
13  situation.  In order to respond to the retrieval
14  request, we need to print them and submit them,
15  but nowhere in here does it specifically say
16  that that needs to be printed on one document.
17      Q.  Okay.
18      A.  But that's not the case with all card
19  associations.
20      Q.  Prior to this litigation, did you
21  have any communication with MasterCard regarding
22  what needed to be printed out on merchant
23  copies?
24      A.  No, other than to review their regs.
25      Q.  You did review their regs correctly,

### 27

1  correct?
2      A.  Uh-huh.
3      Q.  Did you review the —
4      THE COURT REPORTER:  Is that a yes?
5      THE WITNESS:  Yes.
6  BY MR. WARNER:
7      Q.  Did you review the January 2009 regs
8  regarding security rules and procedures of the
9  merchant edition?
10      A.  I — you know, I'm not entirely sure
11  and when I requested them from MasterCard, they
12  refused to provide them, saying they were not
13  public.  We had to work through our acquirers to
14  get information anything older than 12 to 18
15  months.
16      Q.  Do you know if the — do you have any
17  other — do you know if Target has on their
18  computer system any of the Security Rules and
19  Procedures, Merchant Edition from MasterCard?
20      A.  Not other than this version (witness
21  indicating).
22      Q.  Okay.  As far as also the Visa
23  question that we had, was there anything in the
24  Visa that said you needed to print an expiration
25  date on a sales audit copy, the previous

### 28

1  exhibit —
2      A.  Uh-huh.  I think I answered that, no,
3  it doesn't specifically say —
4      Q.  Oh, okay.
5      A.  — that operationally —
6      Q.  Correct.
7      A.  — it happens that way.
8      Q.  And the same thing for 18?
9      There's nothing that says that you
10  need to print it on a sales audit copy?
11      A.  No.
12      Q.  Okay.
13      A.  I —
14      Q.  Thank you.
15      And Target's position is that a
16  merchant copy and a sales audit copy are the
17  same?
18      A.  Correct.
19      Q.  Okay.
20      MR. WARNER:  I'd like to have this
21  marked as Exhibit 19, please.
                  *   *   *
23      (Whereupon, Deposition Exhibit Number
24      19 was marked for identification.)
              *   *   *



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Kristen J. Cook                    January 24, 2011

MAY CONTAIN CONFIDENTIAL PORTIONS

### 29

1 BY MR. WARNER:
2    Q.   Okay. Does this look like a document
3 that you might have reviewed within -- for a
4 part of your job within the past year or so or
5 two years?
6    A.   It looks like the sections that you
7 have here are very similar to what is included
8 in Exhibit 18.
9    Q.   It's just that it's a 2009 edition?
10    A.   (Witness indicating.)
11    Q.   Okay.
12      THE COURT REPORTER: Yes?
13      THE WITNESS: Yes?
14 BY MR. WARNER:
15    Q.   Okay. If you want to look at 3.8.3,
16 Primary Account Number Truncation Expiration
17 Date Omission.
18    A.   (Witness indicating.)
19    Q.   Okay.
20    A.   Yes.
21    Q.   Okay. Have you -- do you ever
22 remember reading this section of -- while you
23 were employed by Target within the past two
24 years?
25    A.   Yes.

### 30

1    Q.   Okay. Can you please read into the
2 record the entire three paragraphs of the 3.8.3?
3    A.   The cardholder and merchant receipts
4 generated by all electronic POS terminals,
5 whether attended or unattended, and all printed
6 ATM receipts must omit the card expiration date.
7 In addition, the cardholder receipt generated by
8 electronic POS terminals, whether attended or
9 unattended, and all printed ATM receipts must
10 reflect only the last four digits of the PAN.
11 All proceeding digits of the PAN must be
12 replaced with fill characters such an X, star or
13 number, that are neither blank nor numeric
14 characters.
15      MasterCard strongly recommends that
16 if an electronic POS terminal generates a
17 merchant copy of the cardholder receipt, the
18 merchant copy should also reflect only the four
19 digits of the PAN, replaced all proceeding
20 digits with fill characters, such as an X, star
21 or a number sign, that are neither blank spaces
22 nor numeric characters.
23      Solely with respect to any deployed
24 electronic POS terminal or ATM currently
25 producing cardholder receipts that properly

### 31

1 reflect only the last four digits of the PAN,
2 the terminal software changes required to
3 exclude the card expiration date from cardholder
4 and merchant receipts may be implemented with a
5 future software update but no later than 31
6 December 2010.
7    Q.   Thank you.
8      What I'm handing you is a document,
9 and we'll mark it as Exhibit 20.
10         * * *
11      (Whereupon, Deposition Exhibit Number
12      20 was marked for identification.)
13         * * *
14 BY MR. WARNER:
15    Q.   Okay. And Exhibit 20 is -- it says
16 Credit Card Expiration Date, if available.
17      This is document -- well, strike
18 that.
19      This is a document that -- did you
20 provide to your counsel?
21    A.   I did not provide it, but I know it
22 was provided.
23    Q.   Do you know who provided it?
24    A.   Yes, I do. Walt Mahanna provided it.
25      However, upon my future review, this

### 32

1 document is not relevant for purposes of what
2 we're discussing in the matter at hand.
3    Q.   Okay. And it's -- why is it not
4 relevant?
5    A.   Because when you take a look at the
6 first one, it's talking about transactions
7 resulting from a mail order or recurring
8 transaction which are not at issue.
9      And for the second section noted
10 here, it's resulting from pre-authorized
11 healthcare transactions which are also not at
12 issue.
13      We did provide the relevant documents
14 in the updated information here (witness
15 indicating).
16    Q.   Okay. Does -- what about Target
17 healthcare clinics?
18      Is that not applicable?
19    A.   Not applicable for pre-authorized
20 healthcare.
21    Q.   Okay. Does Target accept credit
22 cards over the internet?
23    A.   Yes.
24    Q.   What is a customer provided when they
25 do an internet transaction to signify that they



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Kristen J. Cook

January 24, 2011

MAY CONTAIN CONFIDENTIAL PORTIONS

## 33

1  have made a purchase?
2       A.   They are — you know what?
3            I did not prepare information
4  regarding what is accepted over the internet. I
5  was under the understanding that that was not in
6  scope for a — at the point of purchase
7  transaction.
8            MR. MELENDEZ:  And, Kristy, you
9  understand it's just your job to answer the
10 questions that he asks.
11           THE WITNESS:  Okay.
12 I don't know.
13 BY MR. WARNER:
14      Q.   Okay.
15           MR. WARNER:  Go off the record for a
16 quick second.
17                * * *
18           (Whereupon, an off-the-record
19            discussion was had.)
20                * * *
21           (Whereupon, a short recess was taken.)
22                * * *
23 BY MR. WARNER:
24      Q.   Is the only reason that Target
25 stopped printing expiration dates on the sales

## 34

1  audit copy was because of this lawsuit?
2       A.   I don't know.
3       Q.   Do you know who might know?
4       A.   John, maybe.
5       Q.   Do you think anybody in your legal
6  department might know?
7       A.   Possibly.  I wasn't involved in that
8  decision, but it also brings us in compliance
9  with the information you had me read into the
10 record.
11      Q.   All right.  So if there was a — did
12 you write any memorandum regarding this — what
13 we just read to you?
14      A.   No.
15      Q.   Okay.  Do you know if anybody else
16 wrote any memorandum regarding the 2009
17 MasterCard compliance —
18      A.   Not to my knowledge.
19      Q.   How would then Target but for this
20 lawsuit then decide to bring in the — is what
21 you're saying in compliance with MasterCard's
22 rules without any written instructions being
23 written to anybody?
24      A.   In our process, there are several
25 people who have access to the site and who own

## 35

1  that and who reviewed this information.  Our
2  team is responsible for communication regarding
3  card information, but our technology partners in
4  TTS also completely review the mandates.
5       Q.   Is TTS a separate entity?
6       A.   I'm sorry.
7            Yeah.  It's Target Technology
8  Services, so it's the pyramid that John works
9  in.
10      Q.   Okay.  So, to the best of your
11 knowledge, John's did department, TTS, would be
12 the entity that would have any memorandum
13 related to any planned changes for the sales
14 audit copies?
15      A.   Not John's department in
16 particular —
17      Q.   Okay.
18      A.   — but — and we don't normally
19 memorandum things.
20      Q.   How do people at Target know about
21 compliance issues then?
22      A.   E-mail, communication, meetings.
23      Q.   Okay.  Do you know if you were asked
24 to save all of your e-mails regarding any —
25 e-mails regarding FACTA or expiration dates?

## 36

1            Were you —
2       A.   Yes.
3       Q.   You were instructed?
4       A.   (Witness indicating.)
5            MR. MELENDEZ:  Remember to let him
6  finish before you start.
7  BY MR. WARNER:
8       Q.   Are all your e-mails regarding FACTA
9  currently archived somewhere going back to 2005?
10           MR. MELENDEZ:  Object to the form,
11 but you can answer.
12           THE WITNESS:  I don't know how it
13 happens, but we get notification that our
14 e-mails are, yeah —
15 BY MR. WARNER:
16      Q.   Okay.
17      A.   — are being saved during — because
18 of a litigation issue.
19      Q.   Okay.  So, to your knowledge, there's
20 currently a litigation hold on Target's e-mails
21 regarding FACTA issues?
22      A.   To my knowledge.
23      Q.   Okay.
24           MR. WARNER:  We're at 21?
25           THE COURT REPORTER:  That's right.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Kristen J. Cook January 24, 2011

MAY CONTAIN CONFIDENTIAL PORTIONS

37

1       * * *
2       (Whereupon, Deposition Exhibit Number
3       21 was marked for identification.)
4       * * *
5 BY MR. WARNER:
6    Q.   Are you familiar with the document
7 we've now marked as 21, Todd T 431 and 32?
8    A.   I am.
9    Q.   And what is this document?
10    A.   It's a copy of parts of the American
11 Express rules from October 2010. The page you
12 have with 6.6 is the submission requirements for
13 paper-based transactions which we don't do, but
14 the following page or section, I believe it's
15 6.6.1, but we -- has similar information
16 regarding electronic transactions, and that page
17 requires that you need to submit much of the
18 same of these items on a single -- on a single
19 slip for charge-backs and retrievals.
20    Q.   Okay. But you don't need to print
21 the -- according to American Express, you don't
22 need to print the expiration date on any
23 receipt, correct?
24    A.   Actually, for the merchant copy and
25 for retrievals and charge-backs, you do need the

38

1 expiration date.
2    Q.   Printed on the actual merchant copy
3 receipt?
4    A.   Yes.
5    Q.   The journal's not good enough for
6 American Express?
7    A.   Yes, it's not.
8    Q.   Okay. How is Target then complying
9 with American Express' requirements regarding
10 charge-backs if that information is not on the
11 merchant receipt?
12    A.   So for those transactions where the
13 paper copy is printed at the point of sale and
14 the guest signs it, and it prints without an
15 expiration date, we're subjecting ourself to the
16 loss should that transaction come up as a
17 retrieval or a charge-back. We would not be
18 able to adequately support getting that
19 charge-back reversed, so we take the expense on
20 them.
21    Q.   Do you know if anybody at Target ever
22 questioned whether American Express' requirement
23 was illegal?
24    A.   Not to my knowledge.
25    Q.   Okay. Do you know if there would be

39

1 any e-mails -- have you ever seen any e-mails
2 inquiring whether American Express' policy
3 regarding the printing of the full account
4 numbers and expiration dates on a merchant copy
5 was legal under FACTA?
6    A.   No.
7       * * *
8       (Whereupon, Deposition Exhibit Number
9       22 was marked for identification.)
10       * * *
11 BY MR. WARNER:
12    Q.   Have you ever seen this document that
13 we've marked as 22, Rules for Visa Merchants?
14    A.   Maybe.
15       Can you tell me what year is noted at
16 the bottom?
17    Q.   2007 is the copyright date.
18    A.   Can I ask a question?
19    Q.   Sure.
20    A.   Was this the document that was
21 included in the complaint?
22    Q.   The documents in the complaint were
23 just the receipts, one, two, and three. There
24 was a document that -- allegation within the
25 complaint that referenced Visa's instructions to

40

1 merchants, yes.
2    A.   I've seen a document like this one.
3 I'm not sure if it's the 2006 or 2007 version.
4    Q.   Okay. If you want to take a look on
5 the third page, second paragraph from the
6 bottom, it says: Keep the white copy of the
7 transaction receipt.
8       Target doesn't use those, correct?
9    A.   Correct.
10    Q.   Okay. But do you know of other
11 businesses that do use a duplicate white copy,
12 yellow copy receipt format?
13    A.   Yeah. Visa has rules for all
14 different types of merchants.
15    Q.   And they're exact copies of the same
16 receipt, correct, if there's a white and a
17 yellow copy?
18    A.   To my knowledge.
19    Q.   Okay. When there -- one's a customer
20 copy; one's a merchant copy, correct?
21    A.   In my personal experience?
22    Q.   Sure.
23    A.   I can't speak for generally.
24    Q.   Sure. Generally, that's correct.
25       Customer takes one; the merchant gets



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

49

1    A.  John noted when it was actually
2  deployed, so it sounds like a few months ago in
3  the October and November time frame, but I would
4  refer to John Deters' testimony.
5    Q.  Okay.  Do you know when FACTA was
6  passed?
7    A.  2003, if I read right.
8    Q.  All right.  Did Target comply with
9  FACTA?
10    A.  Yes.
11    Q.  What steps did it take to comply with
12  FACTA?
13    A.  On the cardholder copy of the
14  receipt, it – it presented only the last four
15  digits of the account number and removed the
16  expiration date.
17    Q.  Okay.  And did Target accomplish this
18  change by modifying the Point of Sale software?
19    A.  I don't know in particular but from
20  what I'm learning, it sounds like that's how we
21  did it.  John might be able to say how better
22  than I.
23    Q.  Okay.  Mr. Warner asked you some
24  questions just a little while ago toward the end
25  of his examination of you about cases where a

50

1  merchant prints a yellow and a white copy of a
2  receipt?
3    A.  Uh-huh.
4    Q.  And you testified that in your
5  experience, the yellow and the white copies were
6  identical.
7    Do you remember that testimony?
8    A.  Yes.
9    Q.  Have you ever, in fact, compared the
10  yellow and the white copies to see whether they
11  are, in fact, identical?
12    A.  No.  And as I thought about it more,
13  the one piece that I know is different on those
14  two copies is one says merchant copy at the
15  bottom, and one says cardholder copy at the
16  bottom, so that would be one known change.
17  There could be more.
18    Q.  All right.  So, clearly, they are not
19  identical, are they?
20    A.  Not completely identical.
21    Q.  Okay.  Do you know in what other
22  respects they may differ?
23    A.  I don't.
24    Q.  And Mr. Deters mentioned a couple
25  of – a couple of questions where you would know

51

1  the answer better than he would, and I'd like to
2  come back to those.
3    First, Mr. Deters was asked whether
4  Target could count, physically count the number
5  of sales audit copies that it was storing from
6  the last – from -- for a 13-month period.
7    Do you remember that?
8    A.  Yeah.
9    Q.  How would Target go about doing that,
10  ascertaining that precise number?
11    A.  I think we would need to bring in
12  probably contractors because we don't have the
13  capacity to be able to do that and literally
14  take box by box off of the shelves and count
15  through each one to figure out how many there
16  were just to get the count piece, but then
17  manual matching them up to a source file that
18  John's team might pull together would be a very,
19  very difficult process.
20    Q.  Okay.  Have you prepared any estimate
21  of the expense, what such a process might
22  involve?
23    A.  No.
24    Q.  Okay.  Mr. Deters was also asked
25  about how Target would go about determining the

52

1  identity of a guest who walked away with a sales
2  audit copy.
3    Do you remember that?
4    A.  Yes.
5    Q.  How would Target go about determining
6  the identity of such a guest?
7    A.  So I think John mentioned about how
8  we could do it for a REDcard guest.  So the
9  first steps would be to understand what
10  transactions printed a sales audit copy, and
11  then go through that manual process to figure
12  out which ones matched up and which ones were
13  missing.  Then for the ones that were missing,
14  we'd need to figure out is it a REDcard guest?
15    And if so, we have an issuing
16  processing system that holds more information
17  about that guest and would more likely be able
18  to contact them.
19    For the third-party guest, we'd need
20  to find out what the card type was, and then
21  likely what the BIN is and what that issuing
22  bank is, and we would need to reach out to all
23  the issuing banks potentially through our
24  processors.  We haven't explored how that would
25  work, to figure out for each issuing bank



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# EXHIBIT K

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------------------------------------------------

Drametta Todd, individually and on behalf
of a class,

No. 1:10-cv-05598

Plaintiff,

vs.

Target Corporation,

Defendant.

## TARGET'S ANSWERS TO INTERROGATORIES (SET II)

To:   Plaintiff Drametta Todd and her attorneys Curtis C. Warner, Warner Law Firm,
LLC, Millennium Park Plaza, 155 North Michigan Avenue 560, Chicago, IL
60601; and Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and
Francis R. Greene, Edelman, Combs, Latturner & Goodwin, LLC, 18th Floor,
120 South LaSalle Street, Chicago, IL 60603.

Pursuant to Rule 33, Defendant Target Corporation, for its answers to the

interrogatories in the Plaintiff's Second Set of Discovery: (1) Requests for Admission;

(2) Interrogatories; and (3) Document Production Requests to Defendant Target

Corporation (Feb. 11, 2011), states:

For these answers' purposes, "Target" means Defendant Target Corporation.

## General Objections

1.      Target objects to each interrogatory to the extent that it seeks information

protected by the attorney-client privilege, the work-product doctrine, or any other

privilege, protection, or exemption from disclosure.

1

2.     Target objects to each request and each definition or purported instruction to the extent that it requires or purports to require a duty that Target does not otherwise owe. Target will respond as required by Rule 33 or any other applicable rule or order.

3.     Target likewise objects to each definition or purported instruction to the extent that it purports to restate, characterize, qualify, or modify the applicable rules. Target will respond as required by Rule 33 or any other applicable rule or order.

4.     Target objects to the purported instruction, in "Definitions and Instructions," paragraph P, that "[e]ach Interrogatory contained herein is a continuing one. . . . If, after serving an answer to any Interrogatory contained herein, you obtain or become aware of any further information pertaining to such Interrogatory, you are required to serve upon Plaintiff amended answers setting forth such information." Target will supplement its answers as required by Rule 26(e) or any other applicable rule or order.

5.     Target objects to the boilerplate "Definitions and Instructions" that define terms not used in the interrogatories.

### Answers

**No. 1**

*Interrogatory:* In the 13 months immediately prior to the date Target stopped printing a credit card's or debt card's expiration date on Sales Audit Copies, please state the number of Sales Audit Copies that Target printed in connection with purchases at Target paid for with either a Target Store card, a Target Visa card, or a Target debit card.

2

*Answer:* [This interrogatory has been withdrawn, subject to being served again if the Court certifies a class action.]

**No. 2**

*Interrogatory:* In the 13 months immediately prior to the date Target stopped printing a credit card's or debt card's expiration date on Sales Audit Copies, please state the number of Sales Audit Copies generated in connection with purchases at Target paid for with either a Target Store card, a Target Visa card, or a Target debit card that Target retained.

*Answer:* [This interrogatory has been withdrawn, subject to being served again if the Court certifies a class action.]

**No. 3**

*Interrogatory:* Please state that date Target stopped printing a credit card's or debit card's expiration date on Sales Audit Copies.

*Answer:* November 13, 2010.

**No. 4**

*Interrogatory:* In the 13 months immediately prior to the date Target stopped printing a credit card's or debt card's expiration date on Sales Audit Copies, please state the number of Sales Audit Copies generated in connection with purchases at Target paid for with either a Target Store card, Target Visa card, or a Target debit card that Target did not retain. For each such Sales Audit Copy that was not retained, please state the last known address of the customer involved in the transaction.

*Answer:* [This interrogatory has been withdrawn, subject to being served again if the Court certifies a class action.]

3

As to objections:

March 23, 2011.

FAEGRE & BENSON LLP

Michael A. Ponto, No. 203944 (Minn.)
Brian Melendez, No. 223633 (Minn.)
        (application for admission pro hac vice
        pending)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Ph. 612.766.7309
Fax 612.766.1600

in association with

JOHNSON & BELL, LTD.
Garrett L. Boehm
Justin H. Volmert
Suite 2700
33 West Monroe Street
Chicago, IL 60603-5404
Ph. 312.372.0770
Fax 312.372.9818

Attorneys for Defendant
        Target Corporation

4

As to answers:

Defendant Target Corporation signs these answers, under oath, as Rule 33 provides, by and through its authorized representative whose signature appears below. These answers are based on information available from business records and other documents in Target's possession, custody, or control, and on the knowledge or information furnished by Target's employees, attorneys, and other agents, and do not necessarily reflect the personal knowledge of the individual who is signing the answers on Target's behalf.

March 21, 2011.

TARGET CORPORATION

By John Deters
Engineering Consultant
Target Corporation

The foregoing was sworn to before me and subscribed in my presence this day, March 21, 2011:

LISA L. WOOD
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2012

Seal

Notary Public

fb.us.6528579.02

LISA L. WOOD
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2012

5

# EXHIBIT L

COPY

Page 1

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3    - - - - - - - - - - - - - - - - - - - - - - - - - -

    DRAMETTA TODD,
4    individually and on
    behalf of a class,

5

6              Plaintiff,

7
    v.                                  10 C 5598

8

9    TARGET CORPORATION,

10             Defendant.

11   - - - - - - - - - - - - - - - - - - - - - - - - - -

12

13   ----------------------------------------------------

14

                    DEPOSITION OF

15

                    TERRY MACKIN

16

    ----------------------------------------------------

17

18

19

20

21

22

23

24

    Taken March 30th, 2011        By Jenelle K. Lundgren

25

Page 10

1  Q    Do you know the basis of why Target stopped
2      printing expiration dates on sales audit copies?
3  A    No, I do not.
4  Q    But do you know who might know at Target?
5  A    I'm not sure who it would be.  In the time frame
6      that John was talking about, I was out on medical
7      leave for five weeks.
8  Q    Okay.  When you were in your position at the
9      point of sales, did you have any responsibility
10      dealing with the Fair Credit Reporting Act as it
11      pertains on the truncation requirement on any
12      receipts provided to the cardholder at the point
13      of sales or transaction?
14  A    I didn't per se have FACTA responsibilities.  In
15      our IT job, unless it's an infrastructure type of
16      change, we take direction on all of these changes
17      from our business partners.
18  Q    And who would your business partners have been in
19      2008?
20  A    For a change -- a change relating to -- what kind
21      of?
22  Q    The sales audit copy.
23  A    It depends.  It could have been finance because
24      they run the sales audit group, and it could have
25      been Target Financial Services because they run

Page 11

1      our credit business.
2  Q    In 2008, do you know who was in charge of the
3      financial branch at Target?
4  A    What do you mean by "financial branch"?
5  Q    The entity that you were just referring --
6      previously referring to who might be your
7      business -- how would you phrase it?  Business
8      partner or business associate?
9  A    Right, business partner is what I said.  The
10      partner that I have in sales audit is Janelle
11      Norling.
12  Q    How do you spell her last name?
13  A    N-O-R-L-I-N-G.
14  Q    And do you know how long she has been in that
15      position?
16  A    She was probably -- she's not currently in that
17      position, but she was probably in that position
18      maybe five years.
19  Q    So would it have included the years 2008?
20  A    Yes.
21  Q    2009?
22  A    Yes.
23  Q    And part of 2010?
24  A    I don't know.
25  Q    At any time prior to September of 2010, did you

Page 12

1      ever, ever have any conversation or written
2      communication with an attorney employed by Target
3      about truncating expiration dates on receipts?
4  A    Not that I recall, but that would have been quite
5      a few years ago.  Target has been -- jumped all
6      over FACTA so that we had -- were compliant very
7      early in the game.  I remember reading articles
8      in the Wall Street Journal about companies that
9      were having FACTA lawsuits and couldn't believe
10      that people that far after the effective date
11      could be having problems.
12  Q    To your knowledge, did -- prior to the actual
13      effective date of FACTA, was Target truncating
14      the expiration date also on the receipts that
15      itemized purchases that are provided to a
16      customer?
17  A    Yes, we were compliant on -- we were compliant.
18      The receipt had the expiration date gone and the
19      account number was truncated by the effective
20      date.
21  Q    Do you know if there was a point in time in which
22      Target was printing whole account numbers on
23      sales audit copies?
24  A    I don't recall that, no.
25  Q    So, to the best of your knowledge, Target has

Page 13

1      never printed a full account number on a sales
2      audit copy?
3  A    That's probably -- I'll answer it this way:
4      Years ago, we had two-part paper in the register.
5      One part was the receipt that went to the
6      customer and the yellow copy on the
7      pressure-sensitive paper was retained by the
8      store, and that was our sales audit copy.  At the
9      time when retailers moved to electronic journal,
10      we no longer printed two pieces of paper all the
11      time.  At that point, everything that we needed
12      would go into our electronic journal files, so it
13      was just machine readable.  Right?  And then --
14  Q    Let's --
15          MR. MELENDEZ:  He hadn't finished his
16  answer.
17          MR. WARNER:  I'm sorry.
18          THE DEPONENT:  Then, as Target moved to
19  signature capture, it becomes important for us to find
20  a way that, if we were offline or if the pin pad, our
21  sig -- was both for entering the debit pin and for
22  also capturing a signature, so if that device isn't
23  available, we needed some way to get the signature of
24  our guest.  So that's where the sales audit copy came
25  from, because we needed to get the signature of the

4 (Pages 10 - 13)

1   VCD." Would you please interpret that entry for
2   us?
3 A   The VCD is found on a guest receipt, and that's
4       got specific information about tender and
5       discounts, and that's what allows us to return --
6       to return -- a guest to return merchandise
7       because, if we don't have a computer record of
8       the purchase, if we're totally offline, we -- the
9       point of sale system will then use the
10      information that's encoded in the VCD to be able
11      to return things, at least at a receipt level.
12      So it doesn't have all the item information, but
13      it has a total transaction amount. It separates
14      out what the tax is and what discounts are there.
15 Q   Okay.
16 A   And what that entry says is that they took the
17      VCD off of the sales audit copy in 2001 and they
18      added the receipt ID bar code. And, to my 2011
19      way of thinking, what that says is we don't want
20      to be able to use the sales audit copy to return
21      any merchandise, so get the VCD off there and
22      make sure we've got the receipt ID in place.
23 Q   Okay. Today, can a guest use a sales audit copy
24      to return merchandise?
25 A   No.

1 Q   And has that been true since 2001, that they
2       can't use it?
3 A   Yes.
4 Q   During the time that you've worked with Target,
5       did you start with Target in 2001?
6 A   No. I started at Mervyn's in 1993.
7 Q   But was 2001 when you came over to Target?
8 A   It was somewhere 1999, I think. I was --
9       Mervyn's was owned by Target, so I still worked
10      for the corporation, but I became -- they took
11      all of the IT people and, somewhere in the late
12      '90s, changed us from Mervyn's employees to
13      Target employees.
14 Q   All right. When did you begin your position at
15      point of sale?
16 A   In 1996.
17 Q   Okay. Let me limit my question to the period
18      2000 forward.
19 A   But I will add that, in 1996, I reported to the
20      director of point of sale in Minneapolis, who is
21      Target.
22 Q   Okay. Since the year 2000, have you had dealings
23      with the law department at Target?
24 A   Yes.
25 Q   Frequently?

1 A   More frequently than I would like.
2 Q   I understand what you mean. Has it been your
3       experience that the law department is involved,
4       in some cases, in reviewing business practices
5       and giving advice to what you've referred to as
6       your business partners?
7 A   Yes.
8 Q   Is that interaction generally documented in some
9       way?
10 A   Usually by the time the IT group sees it, you
11      can't tell how that -- how they arrived at the
12      decision they arrived at, but whatever -- our
13      business partners then will say this is what we
14      need this to look like. I always assume that
15      counsel has been involved, especially when it's
16      dealing with anything that there's legislation
17      around or regs, any of that.
18 Q   All right.
19          MR. MELENDEZ: Thank you. I have no
20      further questions.
21          EXAMINATION
22 Q   (By Mr. Warner continuing): I do. Do you know
23      for sure if the legal department ever made any
24      analysis of whether or not it was proper to print
25      an expiration date on a sales audit copy?

1 A   No, I do not.
2 Q   You gave a lot of information and it really
3       sounded like it was well rehearsed. Did you go
4       over these documents with your attorney prior to
5       this deposition?
6          MR. MELENDEZ: Go over which documents?
7          MR. WARNER: The Target audit copy.
8          MR. MELENDEZ: You can answer that.
9          THE DEPONENT: I've gone over this a
10      lot starting on September 3rd, 2010. Not all with --
11      I mean, I don't think very often have I ever sat down
12      with one of our attorneys, either a Faegre attorney or
13      a Target attorney, with any document in particular,
14      but we've certainly had a lot of conversations.
15 Q   (By Mr. Warner continuing): Okay. And all the
16      information that you just went over with your
17      attorney, do you have personal knowledge that the
18      facts that you went over with your attorney are
19      as they are, or are you just looking at this
20      document and making speculations of what the
21      document says?
22 A   Which document are you talking about?
23 Q   Target audit copy. I think it's Exhibit 2.
24 A   Exhibit 2?
25 Q   The document change control document.

9 (Pages 30 - 33)

# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

DRAMETTA TODD, individually        )
and on behalf of a class,          )
              Plaintiffs,          )    No. 10 C 5598
        -vs-                       )
TARGET CORPORATION,                )
              Defendant.           )


        The videotaped deposition of DRAMETTA
TODD, called for examination, taken pursuant to
the Federal Rules of Civil Procedure of the United
States District Courts pertaining to the taking of
depositions, taken before THERESA A. VORKAPIC, a
Notary Public within and for the County of Kane,
State of Illinois, and a Certified Shorthand
Reporter, CSR No. 84-2589, of said state, at 33
West Dearborn Street, Chicago, Illinois, on May
25, 2011, at approximately 11:07 a.m.


**EcoScribe Solutions**

www.EcoScribeSolutions.com

888.651.0505



1        IN THE UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF ILLINOIS

3        EASTERN DIVISION

4

5 DRAMETTA TODD, individually    )

6 and on behalf of a class,      )

7           Plaintiffs,    )  No. 10 C 5598

8    -vs-               )

9 TARGET CORPORATION,          )

10         Defendant.    )

11

12      The videotaped deposition of DRAMETTA

13 TODD, called for examination, taken pursuant to

14 the Federal Rules of Civil Procedure of the United

15 States District Courts pertaining to the taking of

16 depositions, taken before THERESA A. VORKAPIC, a

17 Notary Public within and for the County of Kane,

18 State of Illinois, and a Certified Shorthand

19 Reporter, CSR No. 84-2589, of said state, at 33

20 West Dearborn Street, Chicago, Illinois, on May

21 25, 2011, at approximately 11:07 a.m.

22

23

24

DRAMETTA TODD -vs- TARGET
Todd, Drametta on 05/25/2011

Pages 2..5

Page 2
```
 1   PRESENT:
 2        WARNER LAW FIRM, LLC,
 3        (Millennium Park Plaza,
 4        155 North Michigan Avenue, Suite 560,
 5        Chicago, Illinois 60601,
 6        312-238-9820), by:
 7        MR. CURTIS C. WARNER,
 8        cwarner@warnerlawllc.com,
 9             and
10        EDELMAN COMBS LATTURNER & GOODWIN, LLC,
11        (120 South LaSalle Street, 18th Floor,
12        Chicago, Illinois 60603,
13        (312) 739-4200), by:
14        MS. CATHLEEN M. COMBS,
15        ccombs@edcombs.com,
16             appeared on behalf of Plaintiffs;
17
18
19
20
21
22
23
24
```

Page 3
```
 1   PRESENT: (Continued)
 2
 3        FAEGRE & BENSON,
 4        (3200 Wells Fargo Center,
 5        1700 Lincoln Street,
 6        Denver, Colorado 80203-4532,
 7        612-766-7000), by:
 8        MR. BRIAN MELENDEZ,
 9        bmelendez@faegre.com,
10             appeared on behalf of Defendants.
11
12   VIDEOTAPED BY: ANTHONY MILLER,
13             Legal Videographer
14
15   REPORTED BY:  THERESA A. VORKAPIC,
16             C.S.R. Certificate No. 84-2589
17
18
19
20
21
22
23
24
```

Page 4
```
 1        THE VIDEOGRAPHER:  Good morning.  We are
 2   going on the record at 12:05 p.m.  My name is
 3   Anthony Miller and I am a legal videographer in
 4   association with Ecoscribe.  The Court Reporter
 5   today is Theresa Vorkapic.
 6             Here begins the videotaped deposition of
 7   Drametta Todd taking place at Johnson & Bell,
 8   Limited, 33 West Monroe, Chicago, Illinois.
 9   Today's date is May 25th.  This deposition is
10   being taken in the matter Todd versus Target, Case
11   No. 06936 A-1001.
12             At this time, would the Court Reporter
13   please swear in the witness?
14        MR. MELENDEZ:  I don't think that's the right
15   case number.
16        THE VIDEOGRAPHER:  That's what I've got.
17        MR. MELENDEZ:  I noticed from the 06.
18        THE VIDEOGRAPHER:  The case number is 10 CV
19   05598.
20             (WHEREUPON, the witness was duly
21             sworn.)
22             DRAMETTA TODD,
23   called as a witness herein, having been first duly
24   sworn, was examined and testified as follows:
```

Page 5
```
 1             EXAMINATION
 2   BY MR. MELENDEZ:
 3        Q.   Good morning, Ms. Todd.  How are you?
 4   My name is Brian Melendez.  I'm the lawyer
 5   representing Target Corporation whom you've sued
 6   in this lawsuit.  You are here for your deposition
 7   as the plaintiff in the lawsuit.
 8             Do you understand that?
 9        A.   Yes.
10        Q.   Ms. Todd, have you had your deposition
11   taken before?
12        A.   No.
13        Q.   So this is the first deposition you've
14   ever given?
15        A.   Yes.
16        Q.   You probably met a little bit with your
17   lawyer, but let me go over some of the ground
18   rules which you may have already heard about.
19             As you can see, there is a videographer
20   and there's also a Court Reporter taking down what
21   you say so it's important that when I ask you a
22   question, first of all, that you let me finish the
23   question before you begin your answer because if
24   we talk over each other, even if you think you
```

DRAMETTA TODD -vs- TARGET
Todd, Drametta on 05/25/2011

Pages 6..9

**Page 6**

1 know what I'm going to say, and you may well know
2 what I am going to say, we need to make sure we
3 don't both talk at the same time because the court
4 reporter is taking down what we say and if we are
5 talking at the same time, she can't do that.
6    A.   Of course.
7    Q.   Another thing that I'll ask you is to
8 answer audibly with a yes or no rather than
9 shaking or nodding your head because even though
10 that may show up on the video, it won't show up in
11 the transcript.
12         Also, if I ask you a question, I'm
13 going to assume that you understood my question if
14 you begin answering it, but if you don't
15 understand my question, and I may very well ask
16 you a question that is unclear or that doesn't
17 make sense to you, then I am going to ask you to
18 let me know that so I can rephrase my question or
19 address whatever it is that's confusing about it,
20 okay?
21    A.   Yes.
22    Q.   So if you do go ahead and start
23 answering my question, I am going to assume that
24 you understood me, okay?

**Page 7**

1    A.   Yes.
2    Q.   All right.  Is there any reason today
3 that you're not able to give us your best
4 testimony?
5    A.   I'm sorry?
6    Q.   Is there any reason today that you are
7 not able to give us your best testimony?
8    A.   Oh, I'll be giving you my correct
9 testimony.
10    Q.   Okay, but you're not taking any
11 medication or under any other kind of impairment?
12    A.   Of course not, no.
13    Q.   And, again, remember to let me finish
14 before you start answering.  In that case, you did
15 know where I was headed, you were right.
16    A.   Yes.
17    Q.   But it will make life easier for Court
18 Reporter if we take turns.
19    A.   Okay.  I understand.
20    Q.   Also, if at any time you need to take a
21 break or you need to visit with your attorney,
22 just let me know that and we can take a break.  I
23 will ask you that if I've asked a question, I'll
24 ask you to answer the question before we take the

**Page 8**

1 break.
2         And one other thing you should keep in
3 mind is that this is not a memory quiz.  I'm not
4 trying to catch you on things that you don't
5 remember.  If there is something that you don't
6 know or don't remember, it's perfectly fine to
7 tell me that, okay?
8    A.   Okay.
9    Q.   Ms. Todd, will you please state your
10 full name for the record?
11    A.   Drametta A. Todd.
12    Q.   Would you spell it, please?
13    A.   D, as in David, r-a-m-e, double t, a,
14 Faye, F-a-y-e, Todd, T-o double d.
15    Q.   Have you ever gone by any other name?
16    A.   No.
17    Q.   So that's been your name since birth?
18    A.   Yes.
19    Q.   Ms. Todd, what is your residence
20 address?
21    A.   6347 South Richmond Avenue, Chicago,
22 Illinois 60629.
23    Q.   How long have you lived there?
24    A.   Nearly a year.

**Page 9**

1    Q.   Where did you live before South
2 Richmond?
3    A.   I lived 3739 South Wentworth, Apartment
4 416.
5    Q.   Also in Chicago?
6    A.   Chicago, Illinois 60609.
7    Q.   How long did you live at that address?
8    A.   Seven months.
9    Q.   Okay.  And can you particular me
10 backwards in time through the places that you've
11 lived over the last few years, please?
12    A.   Yes.  I prior to that I lived 4311
13 South Lamon, which was my mom's residence.  I
14 lived there for roughly 25 years until I got my
15 own apartment and development and then I lived in
16 my apartment for like six before I moved on to
17 Wentworth, and from there I purchased my own
18 property.
19    Q.   How old are you are, Ms. Todd?
20    A.   44.  I'll be 45 December 18.
21    Q.   All right.  How are you employed?
22    A.   I'm a construction laborer.
23    Q.   Who is your employer?
24    A.   Omega Demolition at this time.

DRAMETTA TODD -vs- TARGET
Todd, Drametta on 05/25/2011

Pages 14..17

Page 14

1    Q.    Are these receipts associated with the
2    same transactions that are the subject of --
3    A.    No.
4    Q.    All right.  Why do you think that?
5    A.    Because I think these are different
6    receipts because when I purchased my TV, I didn't
7    buy all these household cleaners so that's how I
8    know they are two separate receipts.  When I went
9    to the store on Pulaski is when I purchased all
10   the household items that I needed for home, and I
11   think when I bought my TV I remember I didn't buy
12   all of these household cleaning supplies.
13   Q.    Ms. Todd, it looks to me that there are
14   two separate receipts here.
15         Do you agree with that?
16   A.    Yes, yes.
17   Q.    Okay.  One of them looks like -- well,
18   the numbers on these documents are Todd 000673
19   through Todd 000676, correct?  Look on the bottom
20   right corner.
21   A.    Correct.
22   Q.    In looks to me like 673 and 674 are one
23   receipt and 675 and 676 are a different receipt;
24   is that correct?

Page 15

1    A.    That looks to be about right I guess,
2    yes.
3    Q.    Okay.  And the purchase of the TV is on
4    the first receipt?
5    A.    Uh-huh.
6    Q.    And on the second receipt there are
7    some household cleaners?
8    A.    Correct.
9    Q.    Or products.  Let me ask you again, do
10   these receipts relate to the transactions that are
11   the subject of this lawsuit?
12   A.    Yes.
13   Q.    Okay.  Now, on the receipts that are in
14   front of you as Exhibit 1, do these receipts show
15   the expiration date of your credit card on them?
16   A.    No, not on these receipts.  I don't see
17   my expiration date.
18   Q.    Do they show the number of your credit
19   card?
20   A.    Yes, the last four, yeah.
21   Q.    Where do you see the last four?
22   A.    Up top by where I purchased whatever
23   product I purchased then, after they're done with
24   the receipt, I see my card number.

Page 16

1    Q.    Okay.  So these receipts do not show
2    the expiration date and they do show the credit
3    card number, but only the last four digits; is
4    that correct?
5    A.    Correct.
6    Q.    Do these records come from files that
7    you kept; in other words, did you keep these
8    receipts and give them to your attorneys?
9    A.    Yes.  Well, these are the receipts, but
10   I also had other receipts that they had issued me.
11   Q.    I understand.  We are going to look at
12   those in a minute.  I'm trying to get down what we
13   have about these receipts first.  Okay?
14   A.    Yes.
15   MR. MELENDEZ:  If we could have this marked
16   as Exhibit 2, please.
17         (WHEREUPON, a certain document
18         was marked Todd Deposition
19         Exhibit No. 2, for
20         identification, as of 05/25/2011.)
21         (WHEREUPON, the document was
22         tendered to the witness.)
23   BY MR. MELENDEZ:
24   Q.    Ms. Todd, you've just been handed

Page 17

1    Deposition Exhibit 2.
2         Have you seen this document before?
3    A.    Yes.
4    Q.    What is it, please?
5    A.    It's the Amended Complaint.
6    Q.    All right.  Are you familiar with the
7    contents of this document?
8    A.    Yes.
9    Q.    Okay.  If you look at the back of the
10   document, there are some exhibits to it labeled
11   Exhibits A and B and C.  Would you look at those,
12   please, not the very last page, but go back a
13   little bit further.
14   A.    Okay.
15   Q.    Ms. Todd, are Exhibits A, B and C the
16   other receipts that you're referring to?
17   A.    Yes.
18   Q.    Do Exhibits A and B and C relate to the
19   same transactions that the receipts in Exhibit 1
20   relate to?
21   A.    Yes, this one is.  Let me see.  Uh-huh.
22   Q.    Is that a yes?
23   A.    Yes.  Sorry.
24   Q.    Now, we've looked at Exhibit 1 and

DRAMETTA TODD -vs- TARGET
Todd, Drametta on 05/25/2011

Page 22

1  card or whatever and then he issued me a receipt.
2      Q.    He who?
3      A.    The young gentleman.
4      Q.    The cashier?
5      A.    Yes.  And so I didn't notice it then,
6  you know, when I get home I always go over my
7  things because, you know, a lot of times the store
8  will charge you for things twice and stuff like
9  that, so I always go over my receipt.  So I go
10  over my receipt and I notice that this one has the
11  same thing on it.  So, again, I think it was a
12  Saturday, I called my counsel, I said:  "Curtis,
13  these people are issuing me receipts" and that's
14  how that went.
15      Q.    I think your lawyer might want to give
16  you some advice at this point.
17      MR. WARNER:  She can say that she called
18  counsel, but you don't discuss what we talked
19  about.  You can say you called me.  That's
20  attorney-client privilege, but other than that you
21  called me, that's fine.
22      THE WITNESS:  I'm sorry.
23  BY MR. MELENDEZ:
24      Q.    That's all right.  Don't worry about

Page 23

1  it.
2      MS. COMBS:  He doesn't mind.
3  BY MR. MELENDEZ:
4      Q.    Well, I certainly don't mind, but I'm
5  also not going to push you on so exactly what did
6  you and your lawyer talk about?  Withdrawn.  No,
7  no, that's okay.
8          Now, you said that you contacted your
9  counsel.  You're referring to Mr. Warner here?
10      A.    Yes.  He is my counsel.
11      Q.    Okay.  And was he your counsel at that
12  point because he was already representing you in
13  some other lawsuits?
14      A.    No, but my sister had been dealing with
15  Curtis, I think, for awhile and, well, she
16  actually referred me to him.
17      Q.    When you received these receipts at
18  Target, was that the first contact you had with
19  Mr. Warner?
20      A.    No.
21      Q.    What was the first contact you had that
22  with him?
23      A.    I think maybe The Edge clothing store,
24  I think my daughter had -- because I had issued

Page 24

1  her a card and she had got a receipt from U.S. --
2  again, my sister was the one who, you know,
3  informed us that Curtis, you know, will take care
4  of your -- if your card number and expiration date
5  is on the receipt, and my sister informed me to
6  look out for stuff like that, you know.
7      Q.    What's your sister's name?
8      A.    Linda Todd.
9      Q.    Just one more question about your
10  Amended Complaint.  Paragraph 48 says that:  "Each
11  receipt Target provided Plaintiff contained the
12  expiration date of that card."
13      A.    Uh-huh.
14      Q.    That's not entirely true, is it?  Some
15  of the receipts did and some didn't, right?
16      A.    Well, the receipts had -- at the end of
17  it like you showed me the first exhibits or
18  whatever, those receipts didn't have my -- they
19  had my card number, but they didn't have my
20  expiration date, but the other receipts did.  So I
21  was issued all of these receipts, not just one.
22  They gave me all of them and, like I said, when I
23  purchased the TV it was rolling down the floor and
24  my aunt picked them up and handed it to the young

Page 25

1  man and he handed them to me.
2      Q.    That happened in the Cicero store?
3      A.    Right.
4      Q.    Did anything different happen at the
5  South Pulaski Road store?
6      A.    No, no nothing different happened.
7      Q.    Was your aunt with you?
8      A.    No, uh-uh.  I was by myself this time.
9  I don't know.  I don't think anything different
10  happened.  Maybe I probably because I think they
11  had school paper on sale so I probably was messing
12  around at the register trying to go back and get
13  the school paper that was $.15 or $.10 or
14  something, so I got a case of that I think, yeah,
15  and that was basically it, regular transaction.
16      Q.    Did the receipts fall onto the floor
17  again so that they had to picked up?
18      A.    No, no they didn't.
19      Q.    Ms. Todd, you've had a Target credit
20  card for sometime, have you not?
21      A.    Yes, I have.
22      Q.    Do you know for how long?
23      A.    I'm not going to speculate because I'm
24  not sure.  I don't know.

*EcoScribe Solutions*    888.651.0505

# EXHIBIT N

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DRAMETTA TODD,              )
individually and on behalf of a class,   )     10 C 5598
                                 )
                               )     Judge Chang
              Plaintiffs,      )
                               )     Magistrate Judge Keys
     v.                          )
                               )
TARGET CORPORATION,       )
                               )
             Defendant.      )

**PLAINTIFF'S AMENDED RESPONSES AND OBJECTIONS TO
TO DEFENDANT TARGET CORPORATION'S
FIRST SET OF DISCOVERY**

**INTERROGATORY RESPONSES**

1.    Describe and quantify any actual damages or other injury that you suffered as a result of Target's alleged conduct, including the amount that you claim you are entitled to recover against Target.

    **ANSWER TO INTERROGATORY NO. 1.**  Plaintiff is seeking statutory damages of $3,000. Plaintiff has attached receipts that demonstrate three violations of the Fair Credit Reporting Act as to herself. Plaintiff is seeking statutory damages on behalf of a class of persons also provided similar form receipts.

2.    Explain how you calculated or otherwise arrived at the amount claimed in answer to the preceding interrogatory.

    **ANSWER TO INTERROGATORY NO. 2.**  Under the Fair Credit Reporting Act Plaintiff is entitled to $1,000 in statutory damages per violation of the Act for Target's willful failure to truncate the expiration date from each printed receipt provided to her at the point of sales. Plaintiff is likewise seeking the same statutory damages on behalf of a class of persons also provided similar form receipts.

3.    Set forth each fact or circumstance, and identify each document, that supports or otherwise relates to the allegations in your complaint's paragraphs 45-47.

    **OBJECTION TO INTERROGATORY NO. 3.** Plaintiff's counsel objects to this interrogatory to the extent that beyond being provided a non-FACTA compliant receipt, the exact circumstances upon which Plaintiff was provided such receipts is not relevant nor reasonably likely to lead to the discovery of admissible evidence.

*Todd*      EXHIBIT *5*
FOR I.D. *5/25/11*

**ANSWER TO INTERROGATORY NO. 3.** Subject to and without waiving the objection, on July 17, 2010, Plaintiff made a purchase at a Target store, electronics department, in Cicero, Illinois. Plaintiff did not have enough money on the Target Visa for the total amount of the purchase. Plaintiff asked the male clerk to split the payments between the Target Visa Card and the Chase Debit Card. The clerk rang up the purchase and the receipts were hanging from the register and Plaintiff's Aunt, Linda Myles of Jackson, Mississippi, picked them up from falling off the floor. Plaintiff's Aunt gave the receipts back to the clerk and the clerk then gave Plaintiff two Sales Audit Copies, a redacted copy of which, are attached to Plaintiff's Complaint.

On August 7, 2010, Plaintiff made a purchase at a Target store, at the front register line, on South Pulaski Road in Chicago, Illinois. Plaintiff paid with her Target Visa, Chase Visa and cash. Plaintiff was provided by the clerk two receipts and requested to sign one receipt. She signed one copy of the receipt and took the unsigned copy of the receipt provided. A redacted copy of the Target Visa receipt she was provided is attached to the Complaint. Plaintiff also refers Defendant to the surveillance video Defendant has produced regarding the August 7, 2010 transaction.

4.      For each sale or transaction in which you received any of the documents exhibited to your complaint:

4(a) set forth each action that you and the cashier took with respect to each other, and all verbal or other communication between you and the cashier, from the time that you entered the checkout lane to the time that you exited the store;

**OBJECTION TO INTERROGATORY NO. 4(a).** Plaintiffs counsel objects to this interrogatory as beyond being provided the subject receipts which are attached as exhibit to her Complaint, the request to "set forth each action that you and the cashier took with respect to each other, and all verbal or other communication between you and the cashier, from the time that you entered the checkout lane to the time that you exited the store" requests information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.

**ANSWER TO INTERROGATORY NO. 4(a).** Subject to and without waiving the objections, Plaintiff incorporates and restates her answer provided in her Answer to Interrogatory No. 3. Plaintiff also refers Defendant to the surveillance video Defendant has produced regarding the August 7, 2010 transaction.

4(b) identify each document that was provided to you at the point of sale or transaction;

**OBJECTION TO INTERROGATORY NO. 4(b).** Plaintiffs counsel objects to this interrogatory as beyond being provided the subject receipts which are attached as exhibit to her Complaint, the identity of any other document that was provided to Plaintiff at the point of sales or transaction requests information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.

**ANSWER TO INTERROGATORY NO. 4(b).** Subject to and without waiving the objections, Plaintiff incorporates and restates her answer provided in her Answer to Interrogatory No. 3. Plaintiff also refers Defendant to the surveillance video Defendant has produced regarding the August 7, 2010 transaction.

4(c) state whether the cashier asked you to return the sales-audit copy that is exhibited to your complaint; and

**OBJECTION TO INTERROGATORY NO. 4(c).** Plaintiff's counsel objects to this interrogatory as requests information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. 15 U.S.C. § 1681c(g) is a strict liability statute and the non-compliant receipts were provided to Plaintiff.

**ANSWER TO INTERROGATORY NO. 4(c).** Subject to and without waiving the objections, Plaintiff states, no.

4(d) state whether any receipt other than the sales-audit copy was provided to you at the point of the sale or transaction.

**OBJECTION TO INTERROGATORY NO. 4(d).** Plaintiff's counsel objects to this interrogatory as it requests information beyond the subject three receipts and therefore this interrogatory requests information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.

**ANSWER TO INTERROGATORY NO. 4(d).** Without waiving Plaintiff's relevancy objection, Plaintiff in response to this interrogatory is producing documents Bates No. Todd 000673-000676.

5.    Identify (by court, named parties, and case number) each other lawsuit to which you are or have ever been a party that concerns any alleged violation of the Fair & Accurate Card Transactions Act of 2003 or 15 U.S.C. § 1681c(g).

**OBJECTION TO INTERROGATORY NO. 5:** Plaintiff's counsel objects to the extent that this interrogatory requests information that is not relevant nor likely to lead to relevant information.

**ANSWER TO INTERROGATORY NO. 5.** Subject to and with out waiving the objection Plaintiff states:

   a.    *Todd v. Medieval Times USA, Inc*, 10 C 120 (N.D. Ill).
   b.    *Todd v. The Edge Clothing*, 10 C 1286 (N.D. Ill.)
   c.    *Irwin v. NewTec Window & Door, Inc.*, 10 C 1932 (N.D. Ill).
   d.    *Todd. v. Sports N' Fashion, Inc.*, 10 C 2613 (N.D. Ill).
   e.    *Todd v. Raheel Foods, Inc.*, 10 C 2620 (N.D. Ill.).
   f.    *Todd v. Target Corporation* 10 C 5598 (N.D. Ill.)
   g.    *Todd v. New Quick Mart, LLC*, 11 C 1531 (N.D. Ill.).

6. Identify (by court, named parties, and case number) each other lawsuit to which you are or have ever been a party.

**OBJECTION TO INTERROGATORY NO. 6:** Plaintiff's counsel objects to the interrogatory in that it requests information that is not relevant nor likely to lead to relevant information.

**ANSWER TO INTERROGATORY NO. 6.** Subject to and with out waiving the objection Plaintiff states, none. Although the term "lawsuit" is undefined, if Target includes criminal matters, then Plaintiff has been convicted on multiple occasions for theft and has served prison time, last being released from prison on or about April 2001. The cases were in Cook County, Illinois.

7. Set forth each question of law or fact common to your alleged class.

**ANSWER TO INTERROGATORY NO. 7.** At all times relevant to the class, each of Target's point of sales terminals was programmed to obtain the expiration date of the cardholder's debit or credit card's magnetic strip and print out that expiration date on a receipt identified as a Sales Audit Copy that was provided to customers at the point of sales or transaction. The common question of law is whether Target violated 15 U.S.C. § 1681c(g) by printing receipts in the form attached to Plaintiff's Complaint and providing them to customers. Also whether Target's violation of 15 U.S.C. § 1681c(g) was willful.

8. Identify any person of whom you or your attorneys are aware who is a member of the alleged class in this action and, for each such person, set forth the facts related to his or her alleged claim.

**ANSWER TO INTERROGATORY NO. 8.** Plaintiff. Plaintiff incorporates her answer to Interrogatory No. 3 herein. Plaintiff's counsel investigation is still continuing.

9. Set forth each claim of yours that is typical of the alleged class's claims.

**ANSWER TO INTERROGATORY NO. 9.** At all times relevant to the class, each of Target's point of sales terminals was programmed to obtain the expiration date of the cardholder's debit or credit card's magnetic strip and print out that expiration date on a receipt that was provided to the customer at the point of sales or transaction. Plaintiff and each class member are seeking statutory damages of no less than $100 no more than $1,000 per violation.

10. Identify each lawyer who represents your and the alleged class and, for each such lawyer-
(a) set forth his or her professional biography and credentials and his or her experience with class-action litigation;

**OBJECTION TO INTERROGATORY NO. 10(a).** Plaintiff objects on the

grounds that this interrogatory seeks information which is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER TO INTERROGATORY NO. 10(a).** Subject to, and without waiving this objection, see the respective declarations of Daniel A Edelman and Curtis Warner included in Plaintiff's document production.

(b) identify (by caption, court, dates, and reported decision, if any) each class action that he or she has prosecuted or defended and, for each class action so identified
(1) identify the parties that the lawyer represented or opposed;
(2) identify the other lawyers on the team that represented the clients, and describe the lawyer's role on that team and in the case;
(3) state how the action was resolved, whether by compromise and settlement, summary judgment, trial, appeal, or otherwise, and the extent (if any) to which that resolution did or did not afford the relief requested;

**OBJECTIONS TO INTERROGATORIES NO. 10(b)(1), (2) and (3):** Plaintiff's counsel objects because these interrogatories are unduly burdensome and seeks information which is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects because this interrogatory seeks information from her counsel, not her.

(c)  identify (by caption, court, case number, dates, and reported decision, if any) each matter in which the lawyer, the lawyer's current law firm, or a team on which the lawyer was working, pleaded a class action without a class being certified;

**OBJECTION TO INTERROGATORY NO. 10(c):** Plaintiff's counsel objects because this interrogatory is unduly burdensome and seeks information which is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects because this interrogatory seeks information from her counsel, not her. *Nissei America, Inc. v. Cincinnati Milacron, Inc.*, 95 F.R.D. 471, 475 (N.D. Ill. 1982) ("we have not found a case in which a party has been required to compel its attorney to answer interrogatories about the affairs of other clients represented by that attorney.") Plaintiff's counsel further objects as if such information exists, it would equally be available to Defendant.

(d)  disclose the facts around any disciplinary proceeding against the lawyer or the lawyer's current law firm, including but not limited to the conduct complained of and the proceeding's disposition; and

**OBJECTION TO INTERROGATORY NO. 10(d):** Plaintiff's counsel objects because this interrogatory as it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence relating to the claims Plaintiff has asserted in the matter. Plaintiff also objects because this interrogatory seeks information from her counsel, not her. Plaintiff's counsel objects to the extent that the request seeks information that would not be relevant to the adequacy of Plaintiff's

counsel. Plaintiff's counsel further objects as if such information exists, it would equally be available to Defendant.

(e)  disclose any contempt, sanction, reprimand, admonition, warning, or other finding (however labeled) against the lawyer, the lawyer's current law firm, or any team on which the lawyer was working, or any opinion or decision in which a court has commented favorably or unfavorably on the lawyer's conduct or performance or on the conduct or performance of the lawyer's current law firm or any legal team on which the lawyer was working.

**OBJECTION TO INTERROGATORY NO. 10(e):** Plaintiff's counsel objects because this interrogatory as it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence relating to the claims Plaintiff has asserted in the matter. Plaintiff also objects because this interrogatory seeks information from her counsel, not her. Plaintiff's counsel objects to the extent that the request seeks information that would not be relevant to the adequacy of Plaintiff's counsel. Plaintiff's counsel further objects as if such information exists, it would equally be available to Defendant.

11.  Set forth your fee agreement or other arrangement with your attorney for the payment of attorney's fees and other costs.

**OBJECTION TO INTERROGATORY NO. 11:** Plaintiff's counsel objects because this interrogatory seeks information protected by the attorney-client privilege and which is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

12.  Itemize the attorney's fees and other costs that you have incurred in this action and for which you claim that Target is liable. For each item of claimed attorney's fees, identify the attorney or other timekeeper, date, time spent, rate, fee charged, and service performed, as well as the claim or claims to which the item relates.

**OBJECTION TO INTERROGATORY NO. 12:** Plaintiff's counsel objects to this Interrogatory as premature. Plaintiff will disclose her attorney's fees and costs when and if she files a fee petition.

13.  For each fee or other cost itemized in answer to the preceding interrogatory, state whether you have reimbursed or otherwise paid your attorney for the fee or other cost.

**OBJECTION TO INTERROGATORY NO. 13:** Plaintiff's counsel objects to this Interrogatory as premature. Plaintiff will disclose her attorney's fees and costs when and if she files a fee petition.

14.  With respect to any document of which you are aware that falls (or would fall or have fallen) within any category in the accompanying request for production, but which is not within your possession, custody, or control, identify the document and its current or

last-known location and condition, including the identity of the person who now has or last had the document within his or her possession, custody, or control.

**OBJECTION TO INTERROGATORY NO. 14:** Plaintiff's counsel incorporates the objections made in response to Defendant's Document Production Requests to the documents requests in each request respectively.

15. With respect to any matter of which an admission has been requested in the accompanying requests for admission for which your answer denies or qualifies the matter, set forth each fact that supports or otherwise relates to the denial or qualification, including the true facts of the matter to the best of your knowledge, information, and belief.

**OBJECTION TO INTERROGATORY NO. 15.** Plaintiff objects to this interrogatory as it requests the disclosure of attorney work-product beyond the statements made in response to Defendant's discovery requests. Defendant's requests to admit, request Plaintiff to admit or deny issues of law that are for the Court to determine and therefore, Plaintiff's counsel objects to this contention interrogatory on the basis that it is premature as discovery is ongoing. It is a "general policy is to defer contention interrogatories until discovery is near an end" because "fairness dictates that parties not be forced to prematurely take a position, which would force an artificial narrowing of the issues, instead of an informed paring down." *In re Northfield Labs. Secs. Litig.*, 06 C 1493, 2009 U.S. Dist. LEXIS 114379 * 14 (N.D. Ill. Dec. 8, 2009) (*citing Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 U.S. Dist. LEXIS 18192, 1995 WL 729295, *2 n. 3 (N.D. Ill. Dec. 6, 1995).

16. With respect to any matter of which an admission has been requested in the accompanying requests for admission for which your answer states that the information known or readily obtainable by you is insufficient to enable you to admit or deny the request, state what inquiry you made.

**OBJECTION TO INTERROGATORY NO. 16.** Plaintiff objects to this interrogatory as it requests the disclosure of attorney work-product beyond the statements made in response to Defendant's discovery requests. This interrogatory is really directed at Plaintiff's counsel. As Target's counsel is aware, it has been Plaintiff's counsel who has been conducting discovery through written discovery, taking depositions of Target's employees, American Express, and has scheduled a deposition of Visa. Target and non-party card issuers have given conflicting answers in discovery, and cannot state in some instances the factual basis of matters that Target is requesting Plaintiff to admit.

**PLAINTIFF'S (supplemental) RESPONSE INTERROGATORY NO. 16.** Plaintiff herself has not made any inquiry into the matters that are denied and has relied upon her counsel for making such an inquiry. As Target's counsel is aware, it has been Plaintiff's counsel who has been conducting discovery through written discovery, taking depositions of Target's employees, American Express, and has scheduled a deposition of Visa. Target and non-party card issuers have given conflicting answers in discovery, and

cannot state in some instances the factual basis of matters that Target is requesting Plaintiff to admit.

## DOCUMENT PRODUCTION REQUESTS

1. Each document that is identified or otherwise mentioned in, or that otherwise relates to, your answer to any interrogatory served in the accompanying interrogatories.

**OBJECTION TO DOCUMENT REQUEST NO. 1.** Plaintiff's counsel incorporates the objections made to each and every interrogatory in which the interrogatory request regarding a document identified or otherwise mentioned.

**RESPONSE TO DOCUMENT REQUEST NO. 1.** Subject to and without waiving any objection, Plaintiff has produced these documents.

2. Each document described in your initial disclosures under Rule 26(a)(1)(B).

**RESPONSE DOCUMENT REQUEST NO. 2.** Plaintiff did not make any initial disclosure under "Rule 26(a)(1)(B)" and therefore, no documents based on any action described under "Rule 26(a)(1)(B)" exist.

3. Each document that evidences, mentions, or otherwise relates to any damages or other injury that you suffered as a result of Target's alleged conduct.

**RESPONSE TO DOCUMENT REQUEST NO. 3.** Plaintiff has produced the three subject receipts redacted copies of which were attached to the Complaint. Investigation is still continuing.

4. Each document that constitutes, evidences, mentions, or otherwise relates to any communication from you to Target.

**OBJECTION TO DOCUMENT REQUEST NO. 4.** Plaintiff's counsel objects that the word "communication" is vague. Plaintiff's counsel objects to the extent that any "communication" beyond the subject three receipts is not relevant nor reasonably likely to lead to the discovery of admissible evidence. Plaintiff objects to the extent that the request is unduly burdensome, e.g. producing years of billing statements related to her Target Visa. Plaintiff's counsel further objects to this request to the extent that the documents sought are equally available to Defendant.

**RESPONSE TO DOCUMENT REQUEST NO. 4.** Subject to and without waiving any objection, Plaintiff has produced the three subject receipts redacted copies of which were attached to the Complaint.

5. Each document that constitutes, evidences, mentions, or otherwise relates to any communication from Target to you.

**OBJECTION TO DOCUMENT REQUEST NO. 5.** Plaintiff's counsel objects that the word "communication" is vague. Plaintiff's counsel objects to the extent that any "communication" beyond the subject three receipts is not relevant nor reasonably likely to lead to the discovery of admissible evidence. Plaintiff objects to the extent that the request is unduly burdensome, e.g. producing years of billing statements related to her Target Visa. Plaintiff's counsel further objects to this request to the extent that the documents sought are equally available to Defendant.

**RESPONSE TO DOCUMENT REQUEST NO. 5.** Subject to and without waiving any objection, Plaintiff has produced the three subject receipts redacted copies of which were attached to the Complaint.

6.    Each receipt, sales-audit copy, or other record evidencing any sale or transaction in which you received any of the documents exhibited to your complaint.

**OBJECTION TO DOCUMENT REQUEST NO. 6.** Plaintiff's counsel objects to the extent that this request is not relevant nor reasonably likely to lead to the discovery of admissible evidence.

**RESPONSE TO DOCUMENT REQUEST NO. 6.** Plaintiff has produced the three subject receipts redacted copies of which were attached to the Complaint. Without waiving Plaintiff's relevancy objection, Plaintiff in response to this document response supplements her previous production by producing documents Bates No. Todd 000673-000676.

7.    Each receipt, sales-audit copy, or other record evidencing any sale or transaction in which you bought or returned merchandise using a credit or debit card at a Target store.

**OBJECTION TO DOCUMENT REQUEST NO. 7.** Plaintiff's counsel objects to the extent that this request is not relevant nor reasonably likely to lead to the discovery of admissible evidence.

**RESPONSE TO DOCUMENT REQUEST NO. 7.** Plaintiff has produced the three subject receipts redacted copies of which were attached to the Complaint. Without waiving Plaintiff's relevancy objection, Plaintiff in response to this document response supplements her previous production by producing documents Bates No. Todd 000673-000676.

8.    All process, pleadings, and other papers or documents in each other lawsuit that concerns any alleged violation of the Fair & Accurate Card Transactions Act of 2003 or 15 U.S.C. § 1681c(g), to which you are or have ever been a party, and that were-
(a)    issued or entered by the court;
(b)    filed with the court;
(c)    served by you or your attorney upon any other party or any other party's attorney,
(d)    served upon you or your attorney by any other party or any other party's attorney,

(e)    produced by you or your attorney to any other party or any other party's attorney,

(f)    produced to you or your attorney by any other party or any other party's attorney,

(g)    communicated by you or your attorney to any other party or any other party's attorney,

(h)    communicated to you or your attorney by any other party or any other party's attorney.

This request does not seek any communication between you and any attorney representing you.

**OBJECTION TO DOCUMENT REQUEST NO. 8 and its subsections (a)-(h).** Plaintiff's counsel objects to the request of documents related to other lawsuits as they are not relevant nor reasonably likely to lead to the discovery of admissible evidence. Plaintiff's counsel further objects to this request to the extent that is requests confidential information in the form of settlement agreements that may only be produced in response to a Court order. Plaintiff's counsel further objects to this request to the extent that the documents sought are equally available to Defendant as they are federally filed cases in the Northern District of Illinois.

9.    Any deposition that you have given in any lawsuit or other proceeding, regardless of whether the lawsuit or other proceeding concerns any alleged violation of the Fair & Accurate Card Transactions Act of 2003 or 15 U.S.C. § 1681c(g).

**OBJECTION TO DOCUMENT REQUEST NO. 9.** Plaintiff's counsel objects to the extent that any deposition related to any other lawsuit is not relevant nor reasonably likely to lead to the discovery of admissible evidence.

**RESPONSE TO DOCUMENT REQUEST NO. 9:** Without waiving the objection, none.

10.   For each lawyer who represents you and the alleged class:

(a)    a document or documents that summarize the lawyer's professional biography and credentials and his or her experience with class-action litigation;

(b)    each reported decision in any case in which the lawyer, the lawyer's current law firm, or a team on which the lawyer was working, prosecuted or defended a class;

(c)    each order denying a motion for a class action in any matter in which the lawyer, the lawyer's current law firm, or a team on which the lawyer was working, pleaded a class action;

(d)    each document initiating any disciplinary proceeding against the lawyer or the lawyer's current law firm;

(e)    each document disposing o f any disciplinary proceeding against the lawyer or the lawyer's current law firm;

(f)    each order, opinion, memorandum, transcript, or other document that constitutes, evidences, mentions, or otherwise relates to any contempt, sanction, reprimand, admonition, warning, or other finding (however' labeled) against the lawyer, the lawyer's current law firm, or any team on which the lawyer was working; and

(g)    each written opinion, decision, or other document in which a court has commented

favorably or unfavorably on the lawyer's conduct or performance or on the conduct or performance of the lawyer's current law firm or any legal team on which the lawyer was working.

**OBJECTION TO DOCUMENT REQUEST NO. 10 and its subparts (a)(g).** Plaintiff's counsel objects because this interrogatory is unduly burdensome, overbroad and seeks information which is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects because this interrogatory seeks information from her counsel, not her. *Nissei America, Inc. v. Cincinnati Milacron, Inc.,* 95 F.R.D. 471, 475 (N.D. Ill. 1982) ("we have not found a case in which a party has been required to compel its attorney to answer interrogatories about the affairs of other clients represented by that attorney.") Plaintiff's counsel further objects as if such information exists, it would equally be available to Defendant.

**RESPONSE TO DOCUMENT NO. 10(a).** Plaintiff's counsel has already filed with the Court in support of Plaintiff's Motion for Class Certification a summary of their professional biography, credentials and experience with class action litigation.

11.   Each document that shows, mentions, or otherwise evidences any attorney's fee or other cost that you have incurred in this action and for which you claim that Target is liable.

**OBJECTION TO DOCUMENT REQUEST NO. 11.** Plaintiff objects to this Document Production Request as premature. Plaintiff will disclose her attorney's fees and costs when and if she files a fee petition.

12.   Each document that shows, mentions, or otherwise evidences whether you have reimbursed or otherwise paid your attorney for any attorney's fee or other cost that you have incurred in this action and for which you claim that Target is liable.

**OBJECTION TO DOCUMENT REQUEST NO. 12.** Plaintiff objects to this Document Production Request as premature. Plaintiff will disclose her costs when and if she files a fee petition.

**RESPONSE TO DOCUMENT REQUEST NO. 12.** No such documents exist.

13.   Each document that constitutes, mentions, or otherwise evidences your fee agreement or other arrangement with your attorney for the payment of attorney's fees and other costs.

**OBJECTION TO DOCUMENT REQUEST NO. 13.** Plaintiff objects to this Document Production Request as premature. Plaintiff will disclose her attorney's fees and costs when and if she files a fee petition.

14.   Each statement (within the meaning of Rule 26(b)(3)) concerning this action or its subject matter.

**RESPONSE TO DOCUMENT REQUEST NO. 14.** Subject to and without waiving Plaintiff's objections no documents as described in Rule 26(b)(3)(C) exist

15.     Each document that falls within any category whose production you have requested in this action, but which came into your possession, custody, or control in any way other than disclosure by or discovery from Target.

**OBJECTION TO DOCUMENT REQUEST NO. 15.** Plaintiff objects to this request as it calls for the production of work-product. Plaintiff will supplement this request when any relevant or likely to lead to relevant admissible evidence comes into Plaintiff's possession.

## REQUESTS FOR ADMISSION RESPONSES

1.     Target does not print the expiration date on any receipt that is electronically printed and is provided to the cardholder at the point of the sale or transaction.

**ANSWER TO REQUEST FOR ADMISSION NO. 1:** Denied. For all times relevant to the Amended Complaint, Target electronically printed cardholders' debit or credit card's expiration date on Sale Audit Copy receipts that were provided to the cardholder at the point of sales or transaction in that the Sales Audit Copy is a "receipt", it was "electronically printed" and it was "provided" to the person as opposed to being retained by Target as set forth by the FTC. FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts. *Available at* http://www.ftc.gov/bcp/edu/pubs /business/alerts/alt007.shtm ("Several details of the law [FACTA] are worth noting: It applies only to electronically printed receipts, not to handwritten or imprinted ones. And it applies only to receipts you give your customer at point of sale, not to any transaction record you retain."). Plaintiff further states that the Sales Audit Copies area a written acknowledgement that goods were paid for by the consumer; indeed Target in its deposition stated that the Sales Audit Copy is necessary for charge back purposes. The Sales Audit Copy is a written acknowledgement of Target's receipt of a thing of value without containing any affirmative obligation upon either party to it; indeed Target testified that the Sales Audit Copy will print the highest priced good sold to the customer on the Sales Audit Copy. Plaintiff further states the subject Sales Audit Copies have printed on them the words "RECEIPT ID". Plaintiff further denies this request as documents Target has produced identify that transactional documents generated at point of sales by a customer's use of an in-store card or third party charge cards are receipts.

2.     The documents that the Plaintiff took away from Target and exhibited to the complaint were not the "receipt provided to the cardholder at the point of the sale or transaction" within the meaning of 15 U.S.C. § 1681c(g)(1).

**ANSWER TO REQUEST FOR ADMISSION NO. 2:** Denied. The Sale Audit Copy receipts that were provided to Plaintiff at the point of sales or transaction in that the

Sales Audit Copy is a "receipt" and it was "provided" to Plaintiff as opposed to being retained by Target as set forth by the FTC. FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts. *Available at* http://www.ftc.gov/bcp/edu/pubs /business/alerts/alt007.shtm ("Several details of the law [FACTA] are worth noting: It applies only to electronically printed receipts, not to handwritten or imprinted ones. And it applies only to receipts you give your customer at point of sale, not to any transaction record you retain."). Plaintiff further states that the Sales Audit Copies area a written acknowledgement that goods were paid for by the consumer; indeed Target in its deposition stated that the Sales Audit Copy is necessary for charge back purposes. The Sales Audit Copy is a written acknowledgement of Target's receipt of a thing of value without containing any affirmative obligation upon either party to it; indeed Target testified that the Sales Audit Copy will print the highest priced good sold to the customer on the Sales Audit Copy. Plaintiff further states the subject Sales Audit Copies have printed on them the words "RECEIPT ID". Plaintiff further denies this request as documents Target has produced identify that transactional documents generated at point of sales by a customer's use of an in-store card or third party charge cards are receipts.

3. The documents exhibited to the complaint are not "receipts."

**ANSWER TO REQUEST FOR ADMISSION NO. 3:** Denied. The Sale Audit Copy receipts attached to the Amended Complaint are a "receipt" as set forth by the FTC. FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts. *Available at* http://www.ftc.gov/bcp/edu/pubs /business/alerts/alt007.shtm ("Several details of the law [FACTA] are worth noting: It applies only to electronically printed receipts, not to handwritten or imprinted ones. And it applies only to receipts you give your customer at point of sale, not to any transaction record you retain."). Plaintiff further states that the Sales Audit Copies area a written acknowledgement that goods were paid for by the consumer; indeed Target in its deposition stated that the Sales Audit Copy is necessary for charge back purposes. The Sales Audit Copy is a written acknowledgement of Target's receipt of a thing of value without containing any affirmative obligation upon either party to it; indeed Target testified that the Sales Audit Copy will print the highest priced good sold to the customer on the Sales Audit Copy. Plaintiff further states the subject Sales Audit Copies have printed on them the words "RECEIPT ID". Plaintiff further denies this request as documents Target has produced identify that transactional documents generated at point of sales by a customer's use of an in-store card or third party charge cards are receipts.

4. The documents exhibited to the complaint are sales-audit copies.

**ANSWER TO REQUEST FOR ADMISSION NO. 4:** Admitted only to the extent that Target itself sometimes refers to the documents attached to the Amended Complaint as a sales audit copy and the phrase Sales Audit Copy is printed on them. Denied to the extent that this request for admission is requesting that the Sale Audit Copy receipts attached to the Amended Complaint are a not a "receipt" as such is contrary to the FTC's opinion. FTC Business Alert, Slip Showing? Federal Law Requires All

Businesses to Truncate Credit Card Information on Receipts. *Available at* http://www.ftc.gov/bcp/edu/pubs /business/alerts/alt007.shtm ("Several details of the law [FACTA] are worth noting: It applies only to electronically printed receipts, not to handwritten or imprinted ones. And it applies only to receipts you give your customer at point of sale, not to any transaction record you retain."). Plaintiff further states that the Sales Audit Copies area a written acknowledgement that goods were paid for by the consumer; indeed Target in its deposition stated that the Sales Audit Copy is necessary for charge back purposes. The Sales Audit Copy is a written acknowledgement of Target's receipt of a thing of value without containing any affirmative obligation upon either party to it; indeed Target testified that the Sales Audit Copy will print the highest priced good sold to the customer on the Sales Audit Copy. Plaintiff further states the subject Sales Audit Copies have printed on them the words "RECEIPT ID". Plaintiff further denies this request as documents Target has produced identify that transactional documents generated at point of sales by a customer's use of an in-store card or third party charge cards are receipts.

5.      A sales-audit copy is sometimes known as a "merchant copy."

**ANSWER TO REQUEST FOR ADMISSION NO. 5**: Admitted only to the extent that Target itself sometimes refers to the documents attached to the Amended Complaint as a merchant copy. Denied to the extent that this request for admission is requesting that the Sale Audit Copy receipts attached to the Amended Complaint are a not a "receipt" as such is contrary to the FTC's opinion. FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts. *Available at* http://www.ftc.gov/bcp/edu/pubs /business/alerts/alt007.shtm ("Several details of the law [FACTA] are worth noting: It applies only to electronically printed receipts, not to handwritten or imprinted ones. And it applies only to receipts you give your customer at point of sale, not to any transaction record you retain."). Plaintiff further states that the Sales Audit Copies area a written acknowledgement that goods were paid for by the consumer; indeed Target in its deposition stated that the Sales Audit Copy is necessary for charge back purposes. The Sales Audit Copy is a written acknowledgement of Target's receipt of a thing of value without containing any affirmative obligation upon either party to it; indeed Target testified that the Sales Audit Copy will print the highest priced good sold to the customer on the Sales Audit Copy. Plaintiff further states the subject Sales Audit Copies have printed on them the words "RECEIPT ID". Plaintiff further denies this request as documents Target has produced identify that transactional documents generated at point of sales by a customer's use of an in-store card or third party charge cards are receipts.

6.      Sales-audit copies are not intended to be kept by the cardholder.

**ANSWER TO REQUEST FOR ADMISSION NO. 6** : Objection, whether or not Target intended the cardholder to keep the sales-audit copy is not relevant as 15 U.S.C. § 1681c(g)(1) only requires that the receipt be "provided" to the cardholder as contemplated by the FTC's opinion. FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts. *Available at*

http://www.ftc.gov/bcp/edu/pubs /business/alerts/alt007.shtm ("Several details of the law [FACTA] are worth noting: It applies only to electronically printed receipts, not to handwritten or imprinted ones. And it applies only to receipts you give your customer at point of sale, not to any transaction record you retain."). Admitted to the extent that Target states that the Sales-audit copies are not intended to be kept by the cardholder. Denied to the extent that in a sampling done by Target after it was served with this lawsuit, it was determined that just under 20% of all of Target's guests who are provided a sales-audit copy do not return it to the cashier.

7.     Sales-audit copies must be maintained by a merchant who accepts a credit or debit card in case of a retrieval request from the card issuer.

     **ANSWER TO REQUEST FOR ADMISSION NO. 7**: Objection, whether or not a merchant other than Target must maintain a sale audit copy is not relevant. Subject to the objection, Denied. The sales audit copy is only a secondary source of information as Target keeps the information regarding the cardholders' purchases for at least 5 years and the cardholder's entire account information in encrypted form and the expiration date in unencrypted form, along with keeping the cardholder's signature in an electronic form that is not provided to the cardholder and Target's retention of such information is sufficient to deal with a retrieval request from the card issuer.

8.     The expiration date is printed on the sales-audit copies because Visa and at least one other card network whose cards Target accepts require that Target maintain that information in case of a chargeback or other retrieval request from the card issuer or the card network.

     **ANSWER TO REQUEST FOR ADMISSION NO. 8**: Plaintiff objects to this request for admission as the reason why Target choose to print the expiration date on a sales audit copy is not relevant to what information Visa and at least one other card network requires Target to keep regarding chargebacks and other retrial requests regarding debit and credit card purchases. Subject to and without waiving the objection, Request for Admission No. 8 is denied. Visa, MasterCard, and American Express do not require Target to print the expiration date on sales-audit copies, and Target employees in their depositions have not stated that Discover or any other card network whose cards Target accepts require Target to print the expiration date on a sales audit copy. Nor has Target produced any documents, although requested in written discovery to do so, that expressly state that any card network whose cards Target accepts require Target to print the expiration date on a sales audit copy. Indeed, Ms. Cook at her deposition testified that a document that Target produced to support its position that American Express required Target to print the expiration date on Sales Audit Copies, Todd TO357, was "not relevant." (Cook Dep. Tr. 31-32).

9.     With respect to Target stores, a sales-audit copy is not printed for a PIN transaction that is, a transaction where the cardholder signs electronically using a PIN pad.

**ANSWER TO REQUEST FOR ADMISSION NO. 9:** This request for admission is not relevant to whether a violation of 15 U.S.C. § 1681c(g)(1) occurred. Subject to the objection, and other than Target's witnesses' statements at their depositions to which Plaintiff has no independent knowledge of, admitted.

10. With respect to Target stores, a sales-audit copy is printed only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad (or the PIN pad is out of order).

**ANSWER TO REQUEST FOR ADMISSION NO. 10:** This request for admission is not relevant to whether a violation of 15 U.S.C. § 1681c(g)(1) occurred. Subject to the objection, and other than Target's witnesses' statements at their depositions to which Plaintiff has no independent knowledge of, denied. A sales audit copy can be printed if the PIN pad does not pick up the signature prior to the cardholder pressing "Ok" in the green box at the right hand corner of the PIN pad. Furthermore a sales audit copy will be printed out if the cashier manually types in to the point of sales terminal the credit or debit card's information.

11. For a signature transaction at Target where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad (or the PIN pad is out of order), the cash register prompts the cashier to ask the cardholder to "Sign Paper Copy."

**ANSWER TO REQUEST FOR ADMISSION NO. 11:** This request for admission is not relevant to whether a violation of 15 U.S.C. § 1681c(g)(1) occurred. Subject to the objection, and other than Target's witnesses' statements at their depositions to which Plaintiff has no independent knowledge of, admitted only that a prompt that is visible to the cashier for a paper copy occurs.

12. Each sales-audit copy at Target is labeled "SALES AUDIT COPY," and concludes with the instruction, "PLACE IN MEDIA LOCATION UNDER REGISTER. GSTL -> BIND & PLACE IN MEDIA BRICK AT CLOSE."

**ANSWER TO REQUEST FOR ADMISSION NO. 12:** This request for admission is not relevant to whether a violation of 15 U.S.C. § 1681c(g)(1) occurred. Plaintiff can only admit that the three subject receipts contain the language above, but lacks information to admit or deny whether such language was on each sales audit copy during the putative class period. Furthermore, Target in its depositions likewise does not know the date in which the language above was added to the Sales Audit Copies.

13. For each sale or transaction at a Target store where a credit or debit card is used as payment, a point-of-sale receipt is printed and provided to the cardholder.

**ANSWER TO REQUEST FOR ADMISSION NO. 13:** Plaintiff objects to this request as any other point of sales receipt that is printed and provided to the cardholder other that the subject form receipts attached to Plaintiff's Complaint is not relevant. Subject to and without waiving the objection, and other than Target's witnesses'

statements at their depositions to which Plaintiff has no independent knowledge of, Plaintiff admits only that for each transaction at Target where a credit or debit is used at payment, at least one point-of-sales receipt is printed and provided to the cardholder.

14.     For each sale or transaction at a Target store where a credit or debit card is used as payment, the point-of-sale receipt that is printed and provided to the cardholder itemizes the merchandise being paid for, and can be used by the cardholder to return merchandise.

     **ANSWER TO REQUEST FOR ADMISSION NO. 14:** Plaintiff objects to the request for admission as it is compound, requesting Plaintiff to admit or deny multiple facts. Plaintiff further objects to this request for admission to the extent that it relates to other receipts not at issue in the lawsuit. Plaintiff also objects to this request as whether the receipt provided to the cardholder itemizes the merchandise paid for is irrelevant to whether a violation of 15 U.S.C. § 1681c(g)(1) as to the subject form receipts provided to Plaintiff and the putative class. Plaintiff denies this request as Target has printed numerous different named receipts at the point of sales, including the subject "sales audit copy" that are provided to the cardholder. Plaintiff further denies this request as under Target's policy a cardholder can return most merchandise purchased at Target without any receipt whatsoever.

15.     The sales-audit copy, unlike the point-of-sale receipt that is provided to the cardholder, does not itemize merchandise and cannot be used by the cardholder to return merchandise.

     **ANSWER TO REQUEST FOR ADMISSION NO. 15:** Plaintiff objects to the request for admission as it is compound, requesting Plaintiff to admit or deny multiple facts. Plaintiff objects to this request as it is not relevant nor reasonably likely to lead to the discovery of admissible evidence as no receipt whether a sales-audit copy or a "point-of-sale receipt" is needed to return most merchandise at Target. Plaintiff denies that a sales-audit copy does not itemize merchandise as demonstrated by the one item that Plaintiff purchased in Exhibits A and B attached to the Amended Complaint is listed and itemized. Plaintiff admits that Target has testified in depositions that a sales-audit copy cannot be used by the cardholder to return merchandise, however Target's statement is very questionable given that it is Target's policy that no receipt is needed to make most returns at Target. To the extent that this request for admission requests Plaintiff to admit or deny that a sales-audit copy is not a point-of-sale receipt, Plaintiff denies the same as under 15 U.S.C. § 1681c(g)(1) it encompassed by the statute's any receipt provided at the point of sales language.

16.     Target does not print the expiration date on any receipt that is not a sales-audit copy.

     **ANSWER TO REQUEST FOR ADMISSION NO. 16:** Plaintiff objects to this request for admission as it relates to other receipts not at issue in the lawsuit. Plaintiff's lawsuit only involves the receipts in the form that are attached to Plaintiff's Amended

Complaint. Subject to the objection, admitted.

17.  On or before December 4, 2004, Target modified any cash register or other machine or device that electronically prints receipts for credit- or debit-card transactions to stop printing more than the last five digits of the card number, and to stop printing the expiration date, upon any receipt provided to the cardholder at the point of the sale or transaction.

**ANSWER TO REQUEST FOR ADMISSION NO. 17:** Plaintiff objects to this request for admission as it relates to other receipts not at issue in the lawsuit. Plaintiff's lawsuit only involves the receipts in the form that are attached to Plaintiff's Amended Complaint. Subject to the objection, Plaintiff denies this request to the extent that for all times relevant to the Amended Complaint, Target printed debit and credit card holders' cards' expiration dates on Sales Audit Copies in form attached to Plaintiff's Amended Complaint.

18.  On or before December 4, 2004, Target modified any cash register or other machine or device that electronically prints receipts for credit- or debit-card transactions to stop printing more than the last five digits of the card number, and to stop printing the expiration date, upon any receipt (other than a sales-audit copy) provided to the cardholder at the point of the sale or transaction.

**ANSWER TO REQUEST FOR ADMISSION NO. 18:** Plaintiff objects to this request for admission as it relates to other receipts not at issue in the lawsuit. Plaintiff's lawsuit only involves the receipts in the form that are attached to Plaintiff's Amended Complaint. Subject to the objection, Plaintiff admits that for all times relevant to the Amended Complaint, Target printed debit and credit card holder's expiration dates on Sales Audit Copies. Plaintiff further admits that other than the Sales Audit Copy, on or before December 4, 2004, Target modified any cash register or other machine or device that electronically prints receipts for credit- or debit-card transactions to stop printing more than the last five digits of the card number, and to stop printing the expiration date, upon any receipt provided to the cardholder at the point of the sale or transaction.

19.  On or before December 4, 2006, Target modified any cash register or other machine or device that electronically prints receipts for credit- or debit-card transactions to stop printing more than the last five digits of the card number, and to stop printing the expiration date, upon any receipt provided to the cardholder at the point of the sale or transaction.

**ANSWER TO REQUEST FOR ADMISSION NO. 19:** Plaintiff objects to this request for admission as it relates to other receipts not at issue in the lawsuit. Plaintiff's lawsuit only involves the receipts in the form that are attached to Plaintiff's Amended Complaint. Subject to the objection, Plaintiff denies this request to the extent that for all times relevant to the Amended Complaint, Target printed debit and credit card holders' cards' expiration dates on Sales Audit Copies in form attached to Plaintiff's Amended

Complaint.

20.     On or before December 4, 2006, Target modified any cash register or other machine or device that electronically prints receipts for credit- or debit-card transactions to stop printing more than the last five digits of the card number, and to stop printing the expiration date, upon any receipt (other than a sales-audit copy) provided to the cardholder at the point of the sale or transaction.

        **ANSWER TO REQUEST FOR ADMISSION NO. 20:** Plaintiff objects to this request for admission as it relates to other receipts not at issue in the lawsuit. Plaintiff's lawsuit only involves the receipts in the form that are attached to Plaintiff's Amended Complaint. Subject to the objection, Plaintiff denies this request to the extent that for all times relevant to the Amended Complaint, Target printed debit and credit card holders' cards' expiration dates on Sales Audit Copies in form attached to Plaintiff's Amended Complaint and those receipts were provided to Plaintiff and the putative class members at the point of sales.

21.     If Target was negligent in letting the Plaintiff take the sales-audit copies, then the Plaintiff was contributorily negligent.

        **ANSWER TO REQUEST FOR ADMISSION NO. 21:** Plaintiff objects to this request for admission as it requests Plaintiff to admit or deny an issue of law which is for the Court to decide.  Plaintiff also objects to this request as the FCRA is a strict liability statute.  Subject to the objection, Plaintiff denies this request to admit.

22.     The Plaintiffs negligence exceeds any alleged negligence on Target's part.

        **ANSWER TO REQUEST FOR ADMISSION NO. 22:** Plaintiff objects to this request for admission as it requests Plaintiff to admit or deny an issue of law which is for the Court to decide. Plaintiff also objects to this request as the FCRA is a strict liability statute upon a finding of willfulness.  Subject to the objection, Plaintiff denies this request to admit.

23.     The number of sales-audit copies that were "printed" necessarily includes all the sales-audit copies that were stored under the register for the day to be forwarded to Target's central sales-audit office, and were not left in the cardholder's hands.

        **ANSWER TO REQUEST FOR ADMISSION NO. 23:** Denied, the number of sales-audit copies that were "printed" includes all Sales audit copies that were and were not retained by Target.

24.     Target stopped printing a sales-audit copy for every credit- or debit-card transaction on October 30, 2003. At that time, Target restricted the printing of a sales-audit copy only for a signature transaction where the cardholder so requests or where the cardholder leaves blank the signature box on the PIN pad (or the PIN pad is out of order).

**ANSWER TO REQUEST FOR ADMISSION NO. 24:** Plaintiff objects to this request for admission as it contains multiple sentences. This request for admission is not relevant to whether a violation of 15 U.S.C. § 1681c(g)(1) occurred. Subject to the objection, and other than Target's witnesses' statements at their depositions to which Plaintiff has no independent knowledge of, the first sentence is admitted and the second sentence is denied. A sales audit copy can be printed if the PIN pad does not pick up the signature prior to the cardholder pressing "Ok" in the green box at the right hand corner of the PIN pad. Furthermore a sales audit copy will be printed out if the cashier manually types in to the point of sales terminal the credit or debit card's information.

Submitted,

*Curtis C. Warner*

Curtis C. Warner

Curtis C. Warner        (6282197)        cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza, 155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(312) 238-9820 (TEL)

## CERTIFICATE OF SERVICE

I, Curtis C. Warner, an attorney, state that on **May 25, 2011,** I personally delivered and

sent via e-mail Plaintiff's Amended Discovery Responses to:

Brian Melendez
Faegre & Benson LLP
90 Seventh Street South
2200 Wells Fargo Center
Minneapolis, MN 55402-3901

Submitted,

*Curtis C. Warner*

Curtis C. Warner