**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DRAMETTA TODD, individually and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | No. 10 CV 05598 |
| v. | ) ) ) | Judge Edmond E. Chang |
| TARGET CORPORATION, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Drametta Todd brought this lawsuit against Defendant Target Corporation for violating the Fair and Accurate Credit Transactions Act amendment, 15 U.S.C. § 1681c(g), to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*[1] Target moved for summary judgment. R. 42. For the following reasons, the Court denies Target's motion.

**I.**

In deciding the summary judgment motion, the Court views the evidence in the light most favorable to Todd. On July 17, 2010, Todd shopped at a Target store in Cicero, Illinois, and paid for her items using a credit card and a debit card (in other words, she spread the total payment over the two cards). R. 43, Def's Stmt. of Facts (DSOF) ¶ 10. Following the transaction, the clerk working the cash register handed two receipts to Todd. *Id.* ¶¶ 11-12. One was a customer receipt that omitted

---

[1]The Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331.

information about her credit card expiration date. *Id.* ¶ 11. The other (which Target calls a "sales audit copy" or a "merchant copy") included her card expiration date. *Id.* ¶ 12.

On August 7, 2010, Todd shopped at another Target store in Chicago. *Id.* ¶ 13. This time, she used three separate methods for paying for her items: cash, credit card, and debit card. *Id.* After the transaction, Todd once again received two receipts: one with her credit card expiration redacted, and another with the expiration date displayed. *Id.* ¶ 14-15.

Target denies that two copies of "receipts"—the key statutory term, as explained below—were given to Todd. Instead, Target asserts that the second copy—with the expiration date displayed—was a merchant copy that was never meant to be provided to the customer. DSOF ¶ 16. According to Target, customers who receive merchant copies are instructed to sign their name and return the copy to the clerk. *Id.* Merchant copies are printed only when the cardholder either leaves the signature box on the electronic PIN-pad blank or when the cardholder specifically requests a signature transaction.[2] *Id.* In both situations, Target prints a receipt to be handed to the customer and also prints a sales audit copy (that it takes back from the customer after it is signed) for Target's own records because some credit card and debit card networks require merchants to retain that information. *Id.* ¶ 18.

---

[2]A signature transaction is when the customer hands the credit card directly to the cashier, who then slides it through a card reader built into the cash register. R.48, Melendez Decl. at 51.

After receiving the print-outs showing her credit card expiration dates, Todd filed this lawsuit, alleging that Target violated the Fair and Accurate Credit Transactions Act (FACTA) amendment of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Target has filed a motion for summary judgment, [R.42], which is now fully briefed before the Court. (Despite the general admonition in Rule 23 that class certification should be decided as early as practicable in a case, the parties proposed pursuing a decision on the merits *before* litigating class certification, and the Court agreed to allow the parties to do so. R. 31.)

## II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

## III.

To succeed in its summary judgment motion, Target must demonstrate that (1) it did not provide Todd with a receipt that displayed the expiration date or (2) if it did,

Target did not willfully violate the FACTA amendment to the Fair Credit Reporting Act. The Court will address each of these issues in turn.

**A.**

Congress enacted the Fair Credit Reporting Act in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. *See* 84 Stat. 1128, 15 U.S.C. § 1681. In 2003, Congress amended the FCRA, 15 U.S.C. § 1681 *et seq.*, by enacting FACTA. *See* Pub. L. No. 108–159, 117 Stat. 1952 (2003). FACTA, which was enacted to prevent identity theft, prohibits merchants from printing certain credit and debit card information on receipts provided to customers. Specifically, the statute provides that:

> **(g) Truncation of credit card and debit card numbers**
> . . . .
> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1).

Target argues that the statute does not apply to merchant copies[3] because those copies are retained for record-keeping purposes and thus are not "provided" to the customer. R. 44 at 5-9. At this high level of abstraction, there is not much quarrel: if a merchant prints a merchant copy with the banned information but retains the document, then the merchant has not "provided" a receipt to the cardholder at the

---

[3]Target uses the terms "sales audit copy" and "merchant copy" interchangeably. To remain consistent, the Court will use "merchant copy" throughout the opinion.

4

point of sale (or at all). But that abstraction is not the factual context of this case. Here, obviously Todd ended up with the merchant copy; Target did not in fact retain the merchant copy. The true questions are whether Target "provided" a "receipt" to Todd in violation of FACTA. On the latter question—is a merchant copy a "receipt"—the controlling determination is simply whether what Target printed, regardless of the label, fits within the definition of "receipt." The statute does not define "receipt," but its common meaning is a "written acknowledgment that something has been received." Black's Law Dictionary at 1382 (9th ed. 2009). The merchant copies at issue here fit that definition: the copies identify the merchant, the customer, the date (and even time) of the sale, the amount of the payment received from the customer, and even the specific goods purchased. R. 45, Exhs. E, F, H.[4]

So it comes down to whether Target "provided" the merchant copy to Todd. There is no explicit statutory definition, but a common dictionary meaning of "provide" equates the term to "supply" or "furnish." Webster's Third New Int'l Dictionary at 1827

---

[4]Target cites five district court cases (none in the Seventh Circuit) that ostensibly hold that merchant copies are not receipts and thus do not violate FACTA. R. 44 at 5-9. Todd argues that these cases are distinguishable. R. 47 at 8-10. The Court agrees that three of the cases do not establish that merchant copies provided to customers are not receipts under § 1681c(g) (the other two cases are discussed above in the text). *Keller v. Macon County Greyhound Park*, No. 07 CV 1098, 2011 WL 1085976, at *6 (M.D. Ala. Mar. 24, 2011), did not decide whether merchant copies were receipts but instead involved a question of commonality for class certification. *Vinton v. First Data Merchant Services*, No. 10 CV 312, 2011 WL 776135, at *1 (W.D. Mich. Mar. 1, 2011), adopted the magistrate judge's finding that a plaintiff who received a merchant copy had no actionable claim under FCRA, but the opinion does not explain its reason, and as later discussed in the text above, the merchant copy there was "mistakenly" provided, *id.* at *1, which might distinguish *Vinton* from this case. *Ehrheart v. Bose Corp.*, No. 07 CV 350, 2008 WL 64491, at *4 n.4 (W.D. Pa. Jan. 4, 2008), noted that § 1681c(g)(1) excludes "merchants' copies of receipts," but that notation appears to refer to copies *retained* by merchants.

5

(1981). That definition is consistent with two cases cited by Target, *Turner v. Matador Argentinian Steakhouse Corp.*, 2008 WL 4935445 (S.D. Fla. Nov. 18, 2008) (citing *Turner v. Ben & Gabby's, Inc.*, 08 CV 61033 (S.D. Fla. Aug. 25, 2008) (unpublished)). In *Turner v. Matador Argentinian Steakhouse*, the district court cited a dictionary definition of "provide," specifically, "to furnish or supply." 2008 WL 4935445, at *2. When a merchant presents a merchant copy to a customer for signature, and the customer returns the copy to the merchant, then at most the copy has been "presented"—not "provided"—to the customer. *Id.* at *2. This definition of "provided" distinguishes between receipts that are given to the customer to keep and receipts that are given to the customer to sign and return to the merchant. Put another way, if the merchant requested (either verbally or by stating on the copy that it belongs to the merchant) that the customer return the merchant copy, but the customer takes that copy, then it is the *customer* who took the copy and the merchant did not "provide" it.

Here, a reasonable jury could find that the Target cashier intentionally provided the merchant copy to Todd. The deposition transcripts provided by the parties do not unambiguously establish the cashier's intent. Two Target employees—Nicole Nilsen and Ibrahim Riad— who worked in the business department reviewed the surveillance videos from the August 2010 transaction and were then asked about Todd's transaction. R. 48, Exh. F (Nilsen Dep. at 6); Exh. G. (Riad Dep. at 23). Neither deponent testified (nor could they) as to whether Todd took away the receipt despite the cashier's instruction, or whether instead the cashier gave Todd the merchant copy to keep. *Id.* Todd denies that she "wrongfully took possession" of the merchant copy.

6

R. 48, Resp. to DSOF ¶ 12. She argues, in her response brief, that the receipt was simply handed to her. R. 47 at 8. To see if the video itself would provide some clarity, the Court ordered Target to supplement the record with a copy of the surveillance video. R. 74.

After reviewing the video, the Court cannot conclusively determine if the cashier gave Todd the receipt to keep or if instead she walked away with it despite the cashier's instruction. On the one hand, it appears that Todd mistakenly took away the receipt because the cashier gave her a pen—which suggests that she was expected to use it to sign one copy, and then return the pen and the merchant copy to the cashier. On the other hand, the cashier did not appear to ask for the receipt or stop Todd from leaving with the receipt. Nor did any other Target employee make any attempts to stop Todd from leaving. Thus, the video leaves open a genuine issue of fact. To be sure, Todd does not have the strongest facts, but there is enough evidence that the cashier intentionally provided the copies to survive summary judgment.

Target argues that its corporate policy is to retain merchant copies, and that in only a very small percentage of total transactions are merchant copies given to customers.[5] There is an implicit premise underlying that argument: even if one of the merchant's employees intentionally provides the copy to a customer, so long as the

---

[5]Todd claims that, during a two-year period, discovery has revealed that Target gave between 1,961,007 and 2,307,770 merchant copies to customers. R. 58 ¶ 7. According to Target, the roughly 2 million merchant copies must be viewed in the context of over 3 billion transactions over the same time period. R.53 at 2. That works out to about one to two times a day—out of over 2,700 transactions per store per day. *Id.*

*corporation* intends to retain the merchant copies, then the merchant avoids liability. But the general rule is the other-way around: generally, *respondeat superior* liability applies, that is, an employer is liable for its employee's conduct when the employee is acting within the scope of employment. *Cf. Burlington Industries v. Ellerth*, 524 U.S. 742, 756-61 (1998) (applying agency-law principles to Title VII); *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (applying agency-law principles to Fair Credit Reporting Act);[6] *Del Amora v. Metro Ford Sales and Service*, 206 F. Supp.2d 947, 952 (N.D. Ill. 2002) (in FCRA case, noting that *respondeat superior* could apply, although it did not in that specific factual context). There is no text-based reason in FACTA to believe that the usual rule would not apply.

To the contrary, other provisions of the Fair Credit Reporting Act, of which FACTA is a part, suggest that Target's (or any other merchant's) preventive measures are not a defense to liability when its employee intentionally provides a merchant copy to the customer to keep. When it comes to credit reporting agencies, the Fair Credit Reporting Act contains provisions that only require reporting agencies to establish reasonable procedures to promote accurate credit reporting to the extent possible. *E.g.*, 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer

---

[6]Some later opinions have questioned whether *Jones* correctly held that apparent authority may serve as the basis for vicarious liability under the FCRA, but those opinions did not question the general applicability of *respondeat superior* liability (where the employee acts within the scope of employment, not for personal reasons) to credit reporting agencies. *Kodrick v. Ferguson*, 54 F. Supp.2d 788, 793 (N.D. Ill. 1999); *Smith v. Sears, Roebuck and Co.*, 276 F. Supp.2d 603, 609 (S.D. Miss. 2003). Indeed, the credit reporting agency in *Jones* conceded that *respondeat superior* did apply under the FCRA. *Jones*, 144 F.3d at 965.

report it shall follow *reasonable procedures* to assure maximum possible accuracy . . .") (emphasis added); 15 U.S.C. § 1681i(a)(1) ("the agency shall, free of charge, conduct a *reasonable* reinvestigation to determine whether the disputed information is inaccurate . . .") (emphasis added); 15 U.S.C. § 1681i(c) ("Whenever a statement of a dispute is filed, unless there is *reasonable* grounds to believe that . . .") (emphasis added). *See also* 15 U.S.C. § 1681(b) ("It is the purpose of this subchapter to require that consumer reporting agencies adopt *reasonable procedures* . . .") (emphasis added). In contrast, FACTA does not speak in terms of merchants establishing preventive measures. Instead, § 1681c(g)(1) imposes liability when a merchant prints the identity-sensitive information on a receipt and intentionally provides it to the cardholder to keep at the point of sale. That's the prohibited conduct, with no out for instituting preventive measures. With regard to liability, it matters not if a merchant institutes training programs for its cashiers, enacts strict quality control measures to avoid FACTA violations, and rarely hands to its customers receipts with the banned information. Liability attaches when a merchant intentionally provides a receipt to the customer at the point of sale.

## B.

The next question is damages. FACTA generally provides for two forms of relief: actual damages and statutory damages. "FACTA imposes civil liability for violations of this provision [§ 1681c(g)(1)], with available remedies depending upon whether the violation was negligent or willful." *Long v. Tommy Hilfiger*, — F.3d —, 2012 WL 180874 (3d Cir. 2012). If a merchant's violation was only negligent, the plaintiff may

9

recover only actual damages. 15 U.S.C. § 1681o(a)(1). If the violation was willful, however, FACTA allows a plaintiff to recover either actual damages or statutory damages between $100 and $1,000. § 1681n(a)(1)(A). Section 1681n(a) applies to the Fair Credit Reporting Act generally, including FACTA violations.

For a violation to be "willful," the merchant must knowingly violate the statute or exhibit reckless disregard for its statutory duty. *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 56-57 (2007). In *Safeco*, an insurance company failed to notify insurance-policy applicants that the offered insurance rates were higher than the best available rate, and that the setting of the higher rates was based on information in the applicants' credit reports. *Id.* at 55. The applicants contended that offering the higher rates constituted an "adverse action" under the FCRA, and thus required the insurance company to provide the applicants with, among other things, notice of the adverse action. *Id.* The Supreme Court concluded that the insurance company had indeed taken an "adverse action" under the FCRA. *Id.* at 62. But the Court went on to conclude that the insurance company's interpretation of the FCRA (that is, the interpretation of the FCRA to exclude the setting of an initial insurance rate) was not "willful" under § 1681n(a). Specifically, "a company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Because the relevant statutory text provided some

10

foundation for the insurance company's interpretation of the statute, the insurance company had not willfully violated the FCRA.

Target argues that its interpretation of FACTA (that merchant copies are exempt) was not reckless. R. 44 at 13. According to Target, this interpretation was based on three sources. First, the Courts of Appeals are silent over whether merchant copies are receipts under FACTA. *Id*. Second, other district courts have held that merchant copies are not receipts. Third, the Federal Trade Commission's published guidance report on FACTA states that FACTA does not apply to receipts retained by the merchant for record purposes. R.43 ¶ 9, R. 45, Exh. A.

But, as discussed above, there is no quarrel that a merchant copy actually retained by the merchant is not "provided" to the customer, and thus is not a violation of FACTA. That is not the question. The real question is whether FACTA is violated when a merchant copy (with all the usual contents of a receipt) is intentionally given, at the point of sale, to the customer to keep. Target does not explain the textual foundation for the view that there is no violation in those circumstances. Thus, if Todd can prove that the merchant copy was intentionally provided to her to keep, then she will have successfully proven a willful violation of FACTA.

It is worth noting here what the willfulness inquiry does *not* cover. It does not involve an inquiry into how hard the merchant tried to prevent the violation from happening. In other words, neither *Safeco* nor any other case that Target cites suggests that if it is clear that certain conduct violates the Fair Credit Reporting Act (including

11

FACTA), then the defendant can still avoid a finding of willfulness by showing that the defendant tried hard to prevent its employees from committing the violation.[7]

## IV.

One final note is worth mentioning. As explained above, to show a violation of FACTA, the customer must show that the merchant *intentionally* provided the receipt to the customer to keep. In light of that interpretation of what it means to "provide" a receipt, it will likely be difficult for Todd to show that class certification is appropriate under Rule 23(b)(3). The crucial liability question turns on what happened at each point of sale, and that appears to be an individual, sale-by-sale question that will predominate over any common questions. At the next status hearing, the Court

---

[7]After this motion was fully briefed, Target filed with the Court supplemental authority from the Third Circuit that addresses the willfulness issue. R.79 (citing *Long v. Tommy Hilfiger*, — F.3d —, 2012 WL 180874 (3d Cir. 2012)). *Long* determined that there was a FACTA violation, but that the violation was not willful because the defendant did not have an objectively unreasonable interpretation of what FACTA required. *Long*, 2012 WL 180874, at *5. As long as the defendant's interpretation of the statute has *"some* foundation in the text," the court explained, that interpretation is objectively reasonable. *Id.* (emphasis added). Once again, that inquiry into willfulness asked whether the defendant recklessly interpreted the coverage of FACTA, and did *not* ask whether the defendant had tried to prevent employees from committing the violation.

12

will discuss this issue with the parties, as well as any other issues the parties wish to raise. And of course the parties will have an opportunity to file written briefs after the next status hearing. In any event, as to Todd's individual claim, for the reasons discussed above, Target's motion for summary judgment [R. 42] is denied.

                        ENTERED:

                        *[signature: Edmond E. Chang]*

                        Honorable Edmond E. Chang
                        United States District Judge

DATE: March 30, 2012